EDWARD COWLES, EXECUTOR, *vs.* HORACE COWLES AND
OTHERS.

Hartford Dist., Oct. T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

Where a testator in his lifetime makes a gift to a person to whom by his will he has given a general legacy, with the intent that it should be a satisfaction of or substitute for the legacy, the gift will operate as an ademption of the legacy.

The intent of the testator is the decisive thing in the matter; the assent of the legatee is not necessary.

Where a receipt was given by a daughter, who was a general legatee, to her father, for a sum of money "in full of all debts and demands and all right and interest in and to his estate by will or otherwise," it was held—

1. That it did not affect the case that she was a feme covert.
2. Nor that the receipt was in full of all debts and demands as well as of her right to a portion of his estate, and did not show how much of the sum paid was on account of the legacy.

A testator gave the residue of his property to a trustee for the benefit of his grandchildren, to be equally divided among them as they should respectively become twenty-five years of age. One grandchild had reached that age before the testator died and another was born six months after the testator's death. Held—

1. That the unborn child was, in contemplation of law, then in existence, and was therefore at the death of the testator one of the grandchildren and took its share with the rest.
2. That the case was not affected by the fact that one of the grandchildren had become twenty-five years of age during the life of the testator.
3. That in the event of the death of any of the grandchildren before reaching the age of twenty-five years, the heirs of such grandchild would take its share free from the trust and with a right of immediate possession.

[Argued November 8th, 1887—decided April 9th, 1888.]

SUIT for advice as to the construction of a will; brought to the Superior Court in Litchfield County, and, upon facts found, reserved for the advice of this court. The case is fully stated in the opinion.

*J. Huntington* and *A. D. Warner*, for the plaintiff.

*H. C. Robinson* and *W. Cothren*, for the defendants.

PARK, C. J. The controversy in this case grows out of certain bequests in the will of David M. Cowles, late of the town of Bethlehem in this state. They are as follows :—

" I give to my son, Horace Cowles, ten thousand dollars ; to him, his heirs and assigns forever.

" I give to my two daughters, Wealthy C. Porter, the wife of John Porter, and Mary, wife of William Bassett, five thousand dollars worth of bank stock to each of them, in trust. Each is to have and enjoy, during her natural life, all the profits and uses of five thousand dollars worth of

bank stock, and at the decease of either, as it shall occur, their share of this bequest shall be divided equally between all my grandchildren, so soon as they shall attain the age of twenty-five years respectively; to them, their heirs and assigns forever; the worth of said bank stock to be determined by its market value at the time of my decease, and, when so determined, five thousand dollars worth of said stock shall be set out to each of my above-mentioned daughters for the uses and purposes aforesaid.

"I give all the rest and residue of my estate to my executor, in trust, for the benefit of my grandchildren, to be securely invested as he shall think best; the principal and profits to be divided equally between said grandchildren as they shall respectively arrive at the age of twenty-five years; the share of each grandchild to be determined by a division of the whole amount of the fund then existing by the number of said grandchildren to whom no share has been distributed, and the result shall be the share to which each is entitled; to them, their heirs and assigns forever."

After the will was made the testator paid to his son, Horace Cowles, thirteen thousand five hundred dollars, in full satisfaction and discharge of the legacy given him in the will, and of all his right, title and interest in the testator's estate after his decease. The following writing was given by the said Horace to his father and received by him when the money was paid:

"Received of David M. Cowles thirteen thousand and five hundred dollars, it being in full of all my rights, claims and demands upon my father's, David M. Cowles's, estate, by will, inheritance or in any other way. Dated Bethlehem, April 16th, 1880. HORACE COWLES."

After the decease of the testator the executor of his will presented this instrument to the said Horace in full payment of the legacy bequeathed to him in the will, but he refused to accept it; and this raises the second question presented by the executor for our advice, namely:

Whether the legacy given in the will to the said Horace Cowles has been adeemed, satisfied or discharged by the

execution and delivery of the receipt to the testator in his lifetime; and has he any claim on the executor as legatee?

The answer to the question depends upon the intent of the testator in advancing the money to his son. Although he had made his will and in it had given a legacy of money to his son, still that legacy remained subject to his absolute control. He could at any time revoke it in the manner prescribed by the statute; he could satisfy and discharge it, by advancing a sum of money in lieu thereof, so that after his decease it would be void, and be merely evidence of what he had done for his son. All this he might do without any action of the son, and without his consent or approbation. The property was his own, and he could do with it in this regard as he pleased. The case of *Richards* v. *Humphreys*, 15 Pick., 133, is precisely in point. The court there says:—"The only question left for the decision of the court in the present case is, whether the payment made by John Hawes, the testator, in his lifetime, to Mrs. Richards, the present plaintiff, under the circumstances in proof, amounts to an ademption, *pro tanto*, of the legacy now sued for. The ademption of a specific and of a general legacy depends upon very different principles. A specific legacy of a chattel, or of a particular debt or parcel of stock, is held to be adeemed when the testator has collected the debt or disposed of the chattel or stock in his lifetime, whatever may have been the motive or intent of the testator in so doing. But when a general legacy is given of a sum of money out of the testator's general assets, without regard to any particular fund, intention is of the very essence of ademption. The testator during his life has the absolute power of disposition or revocation. If he pays a legacy in express terms during his lifetime, although the term 'payment,' 'satisfaction,' 'release' or 'discharge' be used, it is manifest it will operate by way of ademption, and can operate in no other way, inasmuch as a legacy, during the life of the testator, creates no obligation upon the testator or interest in the legatee, which can be the subject of payment, release or satisfaction. If therefore a testator, after

having made his will containing a general bequest to a child
or stranger, makes an advance, or does other acts, which can
be shown by express proof to have been intended by the
testator as a satisfaction or discharge of, or a substitute
for, the legacy given, it shall be deemed in law to be an
ademption of the legacy.   Hence it is that when a father
has given a child a legacy as a portion or provision for such
child, and afterwards, upon the event of the marriage of the
child, or other similar occasion, makes an advance to such
child as and for such portion or provision, though to a
smaller amount than the legacy, it shall be deemed a sub-
stitute for the provision contemplated by the will, and
thence as an ademption of the whole legacy.   This is founded
on the consideration that the duty of a father to make a
provision for his child is one of imperfect obligation and
voluntary, that his power of disposing is entire and uncon-
trolled, and that he is the best and the sole judge both of his
ability in this respect and of the amount which it is proper
for him to appropriate to any one child as such provision.
* * * His original intent in making such provision by will
is accomplished, his purpose in giving the legacy is satisfied,
and of course the law concludes that the legacy itself is
adeemed.   And if the portion subsequently given as provis-
ion made in the lifetime of the testator is less than the
legacy, still it operates as an ademption of the whole legacy,
not because a smaller sum can be a payment of a larger, but
because it manifests the will and intent of the testator, who
is the sole disposer of his own bounty, to reduce the amount
of the provision contemplated when he made his will.   From
this point of view of the subject of ademption of general leg-
acies, it seems manifest that the ademption takes effect, not
from the act of the legatee in releasing the legacy or receiv-
ing satisfaction of it, but solely from the will and act of the
testator in making such payment or satisfaction or substi-
tuting a different act of bounty which is shown by competent
evidence to be intended as such payment, satisfaction or
substitution.   The question therefore is, whether from the
facts shown in the present case it sufficiently appears that

the advance of money made by the testator in his lifetime to his sister, was intended as a part payment and satisfaction of the legacy given to her by his will. If it was so intended the law deems it an ademption *pro tanto.*"

This case answers the question under consideration fully, clearly and satisfactorily, and in this decision we fully concur.

The case of *Low* v. *Low*, 77 Maine, 37, is another pertinent case. In that case a father gave his son a general legacy of a specific sum of money, and another legacy in the residuary clause. After the will was made the testator paid the son a certain amount of money, and took from him a writing in which the son acknowledged that the sum of money was received by him in full satisfaction and discharge of the legacies given him in the will. The court held that the legacies were adeemed. See also 1 Swift's Digest, 455; *Hartop* v. *Whitmore*, 1 P. Wms., 681; *Clarke* v. *Burgoyne*, 1 Dick., 353; *Clark* v. *Percival*, 2 Barn. & Adol., 660. We think the legacy given to Horace Cowles was adeemed by the testator in his lifetime, by advancing to him the sum of money described in the document given by him to his father when the money was paid.

Although the language of the document purports to be the language of the son, still it shows clearly the purpose and intent of the father in advancing the money, for the son could not receive it for any other purpose than that for which it was offered, and having received it for the purpose of satisfying the legacy, it shows conclusively that it was offered for that purpose.

We therefore answer the question regarding the legacy to Horace Cowles, by saying that it was adeemed by the testator in his lifetime, so that the said Horace has no claim on the executor of his father's will as a legatee.

The next question presented for our advice is, " whether the bequest in the will to Wealthy C. Porter, the wife of John Porter, has been satisfied or discharged by the execution and delivery of the following document to the testator

in his lifetime, and whether she has any claim upon the executor by virtue of the bequest given her in the will."

The document referred to is the following:

"Bethlehem, Conn., May 1, 1885. Received of my father, David M. Cowles, seven thousand dollars in full of all debts, dues and demands to date, and in full payment of all my right, title and interest in and to his estate, and in full of my reversionary or expected interest in his estate, by will or otherwise, and in full of my distributive share in his estate. It being understood that this is binding upon me and my heirs and assigns against all claims, contingent or otherwise, against my father, David M. Cowles, and against his executors, administrators and assigns upon his decease.

"WEALTHY C. PORTER, [L. S.]"

The views we have expressed in relation to the legacy of Horace Cowles, apply with equal force to this legacy, and decide the question adversely to the legatee.

It is said that the money in this case was given in part to cancel "all debts, dues and demands" which the recipient had against her father, and that in this respect the question differs from the one we have considered. But we think there is nothing in this distinction. Confessedly a part of the money was advanced to cancel, satisfy and discharge the legacy given in the will. Whether that sum was less or more than the legacy was of no importance, as we have seen, for the testator had absolute control over it, to annul, satisfy or discharge it as he pleased, without the consent or approval of his daughter.

These remarks show further that there is no substance in the claim that, at the time the money was paid and the document given in exchange, the daughter was a *feme covert*, incapable of making a binding contract; for no contract whatever was necessary to be made with the daughter, and none was attempted to be made. The act of the testator was solely his own. *Richards* v. *Humphrey*, *supra*.

We therefore answer this question as we answered the one we have considered, that the legacy to Mrs. Porter was adeemed by the testator in his lifetime, and consequently

she has no claim upon the executor of his will by virtue of the bequest.

It appears in the case that the testator died on the 17th day of January, 1886; that at that time one of his grandchildren was more than twenty-five years of age; and that a grandchild was born on the twentieth day of July of the same year. These facts raise another question in the case, namely: " Will the grandchild, born after the death of the testator, take any share in the residuary estate, inasmuch as one of the grandchildren had arrived at the age of twenty-five years before the death of the testator?"

A child is considered in being from the time of its conception, where it will be for the benefit of the child to be so considered. Its conception is presumed to have occurred nine months previous to its birth, and where there is no evidence to rebut the presumption, it becomes conclusive. No such evidence appears in this case; indeed the grandchild was born about six months after the death of the testator, when it must have been about three months in being according to the presumption.

The authorities are numerous in support of the doctrine that a child will be considered in being from its conception, where the interest of the child so requires. The case of *Hall* v. *Hancock*, 15 Pick., 255, is a strong case on the subject.

It is needless to multiply cases, for it is conceded that the grandchild, born after the death of the testator, should be considered in being for the purposes of this case, unless the fact that one of the grandchildren had arrived at the age of twenty-five years before the death of the testator makes the case an exception to the rule. The claim is that the class of grandchildren was made up at the death of the testator, inasmuch as one of them was then of sufficient age to take his share of the estate by distribution.

We see no substance in this claim. Suppose the class was made up at the death of the testator, as doubtless it was, the unborn grandchild was then in contemplation of law

living and capable of becoming a member of the class as well as the others. *Hall* v. *Hancock, supra.*

We think therefore that the grandchild, William H. Cowles, born after the death of the testator, must, for all the purposes of this case, be regarded as embraced by the term, "my grandchildren," as used in the residuary clause of the will; and so we answer the fourth, fifth, and sixth questions presented for our consideration and advice.

The seventh question presented by the executors, is as follows:—"In the event of the death of any of said grand-children before attaining the age of twenty-five years, will their heirs take the share of the deceased, and if so, when?" We answer by saying that we think the heirs will take the share of such grandchildren upon their death.

The property contained in the residuary clause of the will vested in the grandchildren upon the death of the testator; but the time when each should come into possession of his or her share, was the time when each should attain the age of twenty-five years. Up to that age the testator preferred that the trustee should have the care and management of the property of each grandchild, rather than that the control of it should be committed to the child. But this requirement was confined to the grandchildren. On the death of one of them before attaining the age of twenty-five years, his or her heirs might be twice or thrice that age, and the reason that induced the testator to make the provision in regard to the grandchildren would not apply to such heirs.

The question is simply whether the trustee shall continue to have the care and management of the property of a deceased grandchild till such time as the grandchild would have attained the age of twenty-five years had he or she lived to that age, or whether the property shall go at once into the possession of the heirs upon the death of the grandchild. The question pertains to the custody of the property in the meantime. The amount of it would be the same when the grandchild would have attained the age of twenty-five years, whether the custody of the property should be in one or the other of the parties up to that time.

No good reason can be given why the provision in regard to the grandchildren should be extended to the heirs of deceased grandchildren, or why such heirs should be deprived of the possession of the property they inherit during such time as the grandchild from whom they inherit would have been deprived of it. We therefore say that the provision of the testator in regard to the time when the grandchildren should come into the possession of the property devised and bequeathed to them, exhausted itself upon the grandchildren; and that consequently the heirs of grandchildren who may die before they arrive at the age of twenty-five years, as well as afterwards, are entitled to the immediate possession of the property they inherit. And so we answer the seventh question submitted to us.

We passed by the first question submitted to us, with regard to the person who would be entitled to the legacy of ten thousand dollars given in trust for Oliver Cowles, in case he should die childless. As the case stands this question is a merely speculative one, and we leave it to be decided when, if ever, it shall become necessary.

In this opinion the other judges concurred.