Lich v. Lich.

---

ELIZABETH LICH, Trustee, et al., Appellants, v. ANGELA M. LICH, Respondent.

**St. Louis Court of Appeals.     Submitted on Briefs March 10, 1911. Opinion Filed June 6, 1911.**

1. **WILLS: Construction: Jurisdiction of Circuit Courts.** Circuit courts, as courts of equity, have jurisdiction to construe doubtful provisions of a will, on application by a trustee named in it, by an executor or administrator acting under it, or by any party interested.

2. ———: ———: **Rules for Construction.** The rule for construing wills, enjoined by section 583, Revised Statutes 1909, that "all courts and others concerned in the execution of last

wills shall have due regard to the directions of the will and the true intent and meaning of the testator, in all matters brought before them" has always been the rule of decision.

3. ———: ———: ———. In construing a will, the testator is presumed to have used particular words according to their common and primary acceptation, unless it appears from the context that he used them in a different sense.

4. ———: ———: ———: "Children." The legal import of the word "children," used in a will designating beneficiaries, accords with its proper signification, and the term is never extended to include grandchildren or any person other than immediate descendents in the first degree of the person named as ancestor, in the absence of something showing a contrary intent.

5. ———: Personal Property: Rules Governing: Descent and Distribution. Estates in personal property, so far as the nature ot the property permits, are governed by the same rules as similar estates in real property.

6. ———: Equitable Estates: Rules Governing: Descent and Distribution. Equitable estates are governed by the same rules of descent as govern the duration of legal estates.

7. TRUSTS: Active Trusts: Wills: Construction. Testator, after reciting that he had four children, devised all of his property in fee to two children as trustees, with power to hold and manage the property, invest the personalty, lease the realty, and collect the income of both, and, with the consent of the rest of testator's children, improve the property, and semi-annually account for and divide between themselves and testator's other children the net income. The will provided that the trust should cease on the death of the last surviving child and that the estate should then be divided among the descendants of the four children *per stirpes*, and further recited that it was testator's wish and purpose to have his estate kept together as long as the trust continued, and that the trustees, with the consent of testator's other children then living, might sell any part of the real estate, but the proceeds of such sale should be held and managed by the trustees. *Held*, that the trust created by the will was an active trust.

8. WILLS: Construction: Trusts: Cross-Executory Limitations: Nature of Estate Conveyed. Testator, after reciting that he had four children, devised all of his property in fee to two children as trustees, with power to hold and manage the property, invest the personalty, lease the realty, and collect the income of both, and, with the consent of the rest of testator's

158 App.—26

Lich v. Lich.

children, improve the property, and semi-annually account for and divide between themselves and testator's other children the net income. The will provided that the trust should cease on the death of last surviving child, and that the estate should then be divided among the descendants of the four children *per stirpes*, and further recited that it was testator's wish and purpose to have his estate kept together as long as the trust continued, and that the trustees, with the consent of testator's other children then living, might sell any part of the real estate, but the proceeds of such sale should be held and managed by the trustees. *Held*, that the interest of the four children in the body of the estate was an equitable one; that the fee to the realty and the absolute ownership of the body of the personalty rested in the trustees, and that the four children had a vested interest as tenants in common in the net income derived from the property, the interest of each being one-fourth. *Held, further*, that the species of estate each of the four children took was as "tenants *per auter vie*" at common law, and if any one of such children should die before the other three, his estate would continue and vest in his personal representatives, and the trust estate would so continue until the death of all four children; hence the will presented no case for the application of the doctrine of cross executory limitations. *Held, further*, that the interest of such tenants was assignable and could be reached by their creditors, and that if one of them conveyed it away, his grantee would hold it, unaffected by his death.

9. ———: ———: Trusts: Termination. A clause in a will which creates a trust, providing that the trust shall terminate on the death of the beneficiaries, has nothing to do with the character of the estate, but merely fixes the duration of the trust.

10. ———: ———: "Descendants." The term "descendants," as used in a will, includes all who proceed from the body of the person named, as children, grandchildren and great grandchildren.

11. REMAINDERS: Contingent: Wills: Construction. A provision in a will creating a trust that, on the decease of testator's last surviving child, the estate shall be divided among the children's descendants creates a contingent remainder.

12. WILLS: Construction: Cross Executory Limitations. The rules as to cross limitations is not a favorite of the law, and in construing a will, courts will not construe such a limitation into it, in the absence of a clearly expressed intention or direction of the testator.

13. ——: ——: Appellate Practice.  In an action to construe a will, where one of the defendants did not appeal from an adverse finding, but the plaintiffs appealed and presented the entire will to the appellate court for construction, the latter court will construe it irrespective of the action of the trial court, and will determine the rights of such defendant, under the will.

14. APPELLATE PRACTICE: Trial Practice: Agreement of Parties not Conclusive, When.  No agreement of parties as to a matter of law can conclude the courts.

15. DOWER: Child's Part: Absolute Right.  The right of the widow of one who left children, to take a child's part, under section 349, Revised Statutes 1909, is so absolute that she takes it without election, and she cannot be divested of it by any fraudulent contrivance of her husband.

16. ——: ——: ——.  A *cestui que trust*, who had a vested interest in the net income of a trust fund created by will, descendible upon his death, died, leaving surviving him a widow and a child.  In an action to construe the will, the court found that the widow had no interest in the trust property, although she claimed her right to take a child's part, under section 349, Revised Statutes 1909.  *Held*, that the finding was erroneous, on the facts presented.

17. WILLS: Construction: Scope of Determination: Trusts.  In construing a will creating an indeterminate trust, with provision for distribution among the descendants of testator's children on the death of his last surviving child, it was error to find that, at the termination of the trust, the daughter of a deceased child would be seized of a particular interest; a direction as to what shall be done when the time for ultimate distribution arrives being improper.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. A.* and *C. R. Hamilton* for appellants.

(1)  Courts of equity will entertain a bill seeking the construction of doubtful provisions of a will, especially where the application is made by a trustee as an aid to the proper execution of his trust.  1 Redfield on Wills, p. 492; Treadwell v. Cordis, 5 Gray 341;

Bowers v. Smith, 10 Paige 193; Bredell v. Collier, 40 Mo. 287; First Baptist Church v. Robberson, 71 Mo. 326; Drake v. Crane, 127 Mo. 85; Mersman v. Mersman, 136 Mo. 244; Waters v. Hatch, 181 Mo. 262; Sevier v. Woodson, 205 Mo. 202; Graham v. Allison, 24 Mo. App. 516. (2) Courts must regard the directions of the will and the true intent and meaning of the testator in construing the same. R. S. Mo. 1909, sec. 583; Armor v. Frey, 226 Mo. 646. (3) A testator is always presumed to use the words in which he expresses himself, according to their strict and primary acceptation, unless, from the context of the will it appears that he used them in a different sense. Wigham on Wills, p. 58; 2 Jarman on Wills, p. 841; Schouler on Wills, sec. 472. (4) The legal import of the word "children" accords with its popular signification. The term is never extended to include grandchildren, or any person other than immediate descendants in the first degree of the person named as ancestor, in the absence of something showing a contrary intent. 5 Am. and Eng. Ency. Law (2 Ed.), p. 1085; 2 Jarman on Wills (6 Ed.), star p. 1000; Nicholson v. Kirk, 52 L. T. Rep. (N. S.) 346; Bride v. Fooks, 3 D. E. G. & J. 252; Moor v. Raisbeck, 12 Sim. 123; Reeves v. Brymer, 4 Ves. Jr. 692; Robinson v. Hardcastle, 2 Bro. C. C. 17; Oxford v. Churchill, 3 Ves. & Beam, 59; Jameson v. Hay, 46 Mo. 546; Adams v. Law, 17 How. 417; Ingraham v. Meade, 3 Wall. Jr. (C. C.) 32; Continental L. Ins. Co. v. Webb, 54 Ala. 700; White v. Rowland, 67 Ga. 546; Willis v. Jenkins, 30 Ga. 167; Pugh v. Pugh, 105 Ind. 552; Cummings v. Plummer, 94 Ind. 403; Hopson v. Com., 7 Bush (Ky.) 644; Phillips v. Beall, 9 Dana (Ky.) 1; Wharton v. Silliman, 22 La. Ann. 343; Asgood v. Lovering, 33 Me. 464; Tayloe v. Masher, 29 Md. 458; Taylor v. Watson, 35 Md. 522; Matter of Chapoton's Estate, 104 Mich. 11; Ward v. Cooper, 69 Miss. 789; Feit v. Van Atta, 21 N. J. Eq. 84; Brokaw v. Peterson, 15 N. J. Eq. 194; Sherman

v. Sherman, 3 Barb. (N. Y.) 385; Tier v. Pennell, 1 Edw. Ch. (N. Y.) 354; Shannon v. Pickell, 55 Hun (N. Y.) 127; Matter of Potter, 71 Hun (N. Y.) 77; Matter of Robinson, 57 Hun (N.Y.) 395; Jackson v. Staats, 11 Johns (N. Y.) 337; Mowatt v. Carow, 7 Paige (N. Y.) 328; Cutter v. Doughty, 23 Wend. (N. Y.) 513; Low v. Harmony, 72 N. Y. 408; Palmer v. Horn, 84 N. Y. 521; Stires v. Van Rensselaer, 2 Bradf. (N. Y.) 172; Ward v. Sutton, 5 Ired. Eq. (N. C.) 421; Mordecai v. Boylan, 6 Jones Eq. (N. C.) 365; Boylan v. Boylan, Phil. Eq. (N. C.) 160; Sinton v. Boyd, 19 Ohio St. 30; Coates St., 2 Ashm. (Pa.) 12; Jarden's Estate, 3 Phila. (Pa.) 438; Fischer's Estate, 13 Phila. (Pa.) 401; Hallowell v. Phipps, 2 Whart. (Pa.) 376; Gable's Appeal, 40 Pa. St. 231; Castner's Appeal, 88 Pa. St. 478; Winsor v. Odd Fellows Beneficial Ass'n, 13 R. I. 149; Tillinghast v. D'Wolf, R. I. 69; Izard v. Izard, 2 Desaus. (S. C.) 308; Moon v. Stone, 19 Gratt. (Va.) 130. (5) Where there is nothing in the context of a will from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, and where his words so interpreted are sensible with reference to extrinsic circumstances, it is an inflexible rule of construction, that the words of the will shall be interpreted in their strict and primary sense, and in no other. Wigham on Wills, p. 66. (6) Grandchildren can be included under the term "children" in two cases only: First, when the instrument would be inoperative unless the term "children" was construed to include grandchildren; second, when the testator has clearly shown by other words that he did not intend to use the term in its proper sense. 5 Am. and Eng. Ency. Law, p. 1088; 1 Roper on Legacies, p. 69; Radcliffe v. Buckley, 10 Ves. Jr. 195; McGuire v. Westmoreland, 36 Ala. 594; Churchill v. Churchill, 2 Metc. (Ky.) 466; Dickenson v. Lee, 4 Watts (Pa.) 82; Scott v. Nelson, 3 Port. (Ala.) 452; Walker v. Williamson,

25 Ga. 549; Denny v. Classe, 4 Ired. Eq. (N. C.) 102; Hunt's Estate, 133 Pa. St. 260; Williams v. Knight, 18 R. I. 333; Hayward v. Hasell, 2 S. C. 500. (7) Where there is a gift to several named persons for their respective lives as tenants in common, and a gift over after the death of the survivor, the law implies cross executory limitations among the life tenants until the death of the last survivor. 2 Jarmon on Wills, p. 1364 (star); Draycott v. Wood, 8 L. T. N. S. 304; Hudson v. Hudson, L. R. 20, Ch. D. 406; Ashley v. Ashley, 6 Sim. 353; Armstrong v. Eldridge, 3 Bro. C. C. 215; Pearce v. Edmeades, 3 Y. & Coll. 246; Loring v. Coolidge, 99 Mass. 191; Bulkley v. Bulkley, 1 Root (Conn.) 78; Glover v. Stillson, 56 Conn. 316.

*Otto F. Karbe* and *Jeffries & Corum* for respondents.

(1) Appellant, as trustee, simply acts as a reservoir of the legal estate with power of administration. Tiedeman on Real Property, secs. 429, 494; Cornwall v. Wulff, 148 Mo. 542; sec. 2867, R. S. 1909; Taylor v. Mayo, 110 U. S. 135; Storys Eq. Jur., sec. 320. (2) Equitable estates are governed by the same rule of descents that governs the devolution of legal estates. Perry on Trusts, sec. 357; Cushing v. Blake, 30 N. J. Eq. 689; Cornwall v. Wulff, 148 Mo. 554; McTigue v. McTigue, 116 Mo. 138. (3) Under the will of George Lich, Sr., his children, at his death, became vested with a particular equitable estate or interest in the real and other property of their father as tenants in common, which particular estate will cease and terminate upon the death of the last survivor of them. Sec. 332, R. S. 1909; sec. 2867, R. S. 1909; sec. 2878, R. S. 1909; Johnston, v. Johnston, 173 Mo. 113; Lemons v. Reynolds, 170 Mo. 233; Rodney v. Laudan, 104 Mo. 259. (4) Under the law, Angela M. Lich, at her birth and as a child of George Lich,

Jr., obtained and became entitled to a vested remainder in her grandfather's estate, which will ripen into an estate absolute upon the death of the last survivor of the children of her said grandfather. Byrne v. France, 131 Mo. 646; Chew v. Keller, 100 Mo. 365; Wadell v. Wadell, 99 Mo. 343; O'Day v. Meadows, 194 Mo. 617; Tindall v. Tindall, 167 Mo. 225; Gates v. Seibert, 157 Mo. 271. (5) George Lich, Jr., occupying the position of a tenant in common with his brother and sisters in the particular estate created by their father's will, and having died, his daughter, Angela M. Lich, as his only heir, is entitled to one-fourth of the net proceeds of such particular estate until the death of all of the children of George Lich, Sr., deceased—the equitable interest of George Lich, Jr., deceased, in said particular estate being descendible. Same authorities as cited under point 4; Cushing v. Blake, 30 N. J. Eq. 695; Perry on Trusts, p. 357; sec. 332, R. S. Mo. 1909. (6) Under the statutes of Missouri in existence at the time of the execution of the will of George Lich, Sr., deceased, and ever since then, every interest in real estate granted or devised to two or more persons—other than executors and trustees and husband and wife—constitutes a tenancy in common unless expressly declared in the grant or devise to be a joint tenancy. Sec. 2878, R. S. 1909; Rodney v. Laudan, 104 Mo. 259.

REYNOLDS, P. J.—George Lich, Sr., died testate in St. Louis, on the 2d of December, 1891, leaving surviving him four children, namely, Elizabeth, Charles, George, Jr., and Mary, the wife of one Eugene G. Weidner. His last will and testament, which was duly admitted to probate, after providing for the payment of his just debts and funeral expenses, is as follows:

"Second: I have four children, two sons and two daughters, namely, George Lich, Jr., Charles Lich,

Elizabeth Lich and Mary Weidner, the wife of Eugene G. Weidner;—My daughter, Mary Weidner, has received twenty-five hundred dollars of me, which is to be treated as an advancement, and which sum is to be deducted from her share of my estate, as hereinafter provided.

"Third: I give, devise and bequeath all my estate of whatever kind and wheresoever situate to my son, George Lich, Jr., and my daughter, Elizabeth Lich, absolutely and in fee. In trust, however, for the following purposes: To hold and manage the same, to invest the personalty and let and lease the realty and collect the income of both, with power to incur all expenses, that they may deem necessary and proper in the management and for preservation of the estate, and with the consent of the rest of my children to improve any part of the property, and they shall semiannually account for, and divide between themselves and my other children, the net income of all my property held under this trust, giving each of them one-fourth part thereof; provided always that my daughter, Mary Weidner, shall not participate in such income until each of my other children shall have received twenty-five hundred dollars from my estate. If so disposed, said trustees may charge reasonable compensation for their services in executing this trust and they shall incur no liability except for the faithful performance of this trust. This trust shall continue so long as any of my children are alive, and upon the death of the last survivor it shall cease, and the estate shall then be divided among the descendants of my said four children, said descendants taking *per stirpes* and not *per capita*. It is my wish and purpose that my estate shall be kept together so long as the trust herein created shall continue, but if any time it shall appear to my said trustees to be indispensably necessary and at the same time advantageous to the trust fund to sell any part of my real estate,

then said trustees are hereby empowered to sell the same provided that all of my remaining children, then living, shall consent thereto and join in the deed; and the proceeds of such sale or sales shall thereafter be held and managed by said trustees under this trust. All property that my daughters may receive under this will shall be for their sole and separate use, free from any marital rights of their husbands, if married.

"Fourth: I hereby nominate and appoint my son George Lich, Jr., and my daughter, Elizabeth Lich, executors of this will and request that they shall not be required to give any bond as such.

"For the aforesaid advancement of twenty-five hundred dollars to my daughter, Mary Weidner, I hold the note of her husband, Eugene G. Weidner, payable to my order. As soon as the other three children shall have each received twenty-five hundred dollars from the income of my estate as above provided, the said Mary Weidner, not having in the meantime participated in such income, the note of said Eugene G. Weidner shall be deemed to have been paid by the said Mary Weidner and shall be returned to her."

Administration having been closed upon the estate, the trustees named took it over and were jointly executing the trust when one of them, George Lich, Jr., died. This trustee was also a son of the testator and one of the beneficiaries named in the will. He died on the 30th of June, 1908, leaving surviving him his widow, Mrs. Sophia Lich, and an only child, Angela M. Lich, a minor, here represented by her mother, who has been appointed her guardian. From the time of the death of George Lich, Jr., the trust has been in the survivor, Elizabeth Lich, a daughter of the testator. On the death of George Lich, Jr., it was claimed for his daughter Angela and her mother that they were entitled to a fourth interest in the net income of the estate before then going to the father and hus-

band, and they demanded that it be paid over to them. The three surviving children of the testator denied this, claiming that on the death of George, Jr., these three surviving "children" of George Lich, Sr., were entitled to the whole of the interest in the net income of the estate. The trustee, Elizabeth, desiring to protect herself as surviving trustee, joined therein by her surviving brother and sister and also suing in her own right as a child of George Lich, Sr., brought suit in the circuit court praying for an order, judgment and decree of that court construing the third clause of the will, and for a decree adjudging the rights of plaintiffs and defendant Angela in and to the net income of the trust estate and for instructions and directions to the trustee for her future guidance and for the protection of the interests of plaintiffs and of defendants. Angela, the minor daughter of George, Jr., answered by guardian. Her mother, Sophia, as the widow of George Lich, Jr., by leave of court, intervened and answered. Each of these plead that they are together entitled to the one-fourth interest in the net income of the estate, Mrs. Sophia Lich claiming that as widow she was entitled to a child's part, that is one-half of the one-fourth. There was no controversy about the relations of the parties. The only evidence submitted to the circuit court, outside of the admissions of the pleadings and the character of the parties to the action, was the will itself, it not being controverted that the $2500, which had been charged as an advance against the share of Mrs. Mary Weidner, has long before been paid by her out of her share of the income of the trust estate, and that she is now entitled to participate in the income of the trust estate not yet and hereafter to be distributed, as fully as if no charge or deduction for advances had been made against her share. The clause being thus submitted, the court, finding the facts as above, and that Mrs. Sophia Lich, as widow of George, Jr., has no

interest in the trust property, further found that the defendant, Angela M. Lich, as the daughter and only heir of George Lich, Jr., deceased, "is entitled to one-fourth of the net income of all the property held under the trust created by the terms of said last will, as aforesaid, from and after the death of said George Lich, Jr., deceased, and until the termination of said trust, at which time she shall and will be seized and possessed of and become the owner of the one-fourth interest in said trust property." Whereupon it was "ordered, adjudged and decreed by the court that plaintiff Elizabeth Lich, as trustee, and each and every successor trustee or trustees under the will of George Lich, Sr., deceased, account to, and pay and turn over to the defendant Angela M. Lich, one-fourth of the net income arising from the trust property created by the terms of said last will of the said George Lich, deceased, said accounting and payments to be made semiannually; that the same be made to the lawful guardian of the said Angela M. Lich so long as the said Angela M. Lich shall be a minor." Costs were adjudged against plaintiffs, who, excepting to the judgment, in due time filed their motion for a new trial and duly appealed to this court on that motion being overruled.

Learned counsel for appellants make two assignments of error: First, that the court erred in its construction of the will of George Lich, Sr., as authorizing his granddaughter Angela Lich to participate in the income of the trust estate created by the will. Second, that the court erred in declaring that the word "children," as used in the third paragraph of that will, comprehended the grandchildren of the testator.

The jurisdiction of our circuit courts, as courts of equity, to construe the doubtful provisions of a will, on application either by the trustee named in it, by an executor or administrator acting under it, or by any party or parties in interest, is undoubted. [1 Red-

field on Wills (4 Ed.), sec. 36, *p. 492; Collier's Will, 40 Mo. 287; First Baptist Church v. Robberson, 71 Mo. 326; Graham v. Allison, 24 Mo. App. 516, l. c. 524.] It has been exercised without question in this state from a very early day. The most recent case in which that has been done, which has come to our attention, is Armor v. Frey, 226 Mo. 646.

By section 583, Revised Statutes 1909, it is provided: "All courts and others concerned in the execution of last wills, shall have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them." This has also always been the rule of decision. [Armor v. Frey, supra.] In this last cited case, Judge Fox, speaking for Division No. 2 of our Supreme Court (l. c. 666), lays down what he designates as the three cardinal rules for the interpretation of wills, namely:

"First: The intention of the testator must be ascertained from the whole instrument.

"Second: The words used are to be understood in the sense indicated by the whole instrument.

"Third: That it is the duty of the courts in the interpretation of last wills to give effect, if possible, to all the clauses of the instrument. In other words, where it is possible to do so, every clause in a will shall have some operation and be effective for some purpose."

It is further beyond dispute that in construing a will or interpreting the words used therein, the testator is always presumed to have used the words in which he has expressed himself according to their common and primary acceptation, unless from the context of the will it appears that he has used them in a different sense. Prof. Redfield (1 Redfield, 4 Ed., top page 434) states the rule as to the interpretation of words, that they "are to receive that construction and interpretation, which a long series of decisions has attached to them, unless it is very certain they were

used in a different sense;'' and it is said in a footnote
to this paragraph, citing Feltman v. Butts, 8 Bush
115, ''the evident intent must prevail, even where
words have to be construed in a sense different from
their technical force.'' It is to be taken as settled that
common words are to be interpreted in accordance
with the commonly accepted definition of the words;
that they are to be given their popular meaning, un-
less it is manifest by the context, that they are used,
either in a technical sense, or that a meaning other
than the common one, is to be given; or that either a
more enlarged or more restricted one is to be given.

In Glover v. Stillson, 56 Conn. 316, a case cited on
another point by counsel for appellants, it is said (l. c.
318): ''There are two methods of construing wills;
one is to ascertain the intention of the testator and
give effect to that so far as it is consistent with the
policy of the law. Within those limits all artificial
rules of construction must yield to the intent. The
other is to apply legal rules and construe the language
used accordingly. In the latter case, it cannot be de-
nied that the intention of the testator is often de-
feated.''

It may be admitted, as contended by learned coun-
sel for appellant, that ''the legal import of the word
'children' accords with its proper signification;'' and
it may be conceded that ''the term is never extended
to include grandchildren, or any person other than im-
mediate descendants in the first degree of the person
named as ancestor, in the absence of something show-
ing a contrary intent.'' Counsel have cited a mul-
titude of authorities in support of this very evident
proposition. On this predicate it is argued by these
same counsel that there is nothing in the context of
this will from which the idea can be gathered that the
testator here has used the word ''children'' in any
other than in its strict and primary sense, they argu-
ing that where his words so interpreted are sensible

and intelligible with reference to extrinsic circumstances, ''it is an inflexible rule of construction, that the words of the will shall be interpreted in their strict and primary sense, and in no other.'' Following this argument, counsel contend that grandchildren can be included under the term ''children'' in two cases only: ''First, when the instrument would be inoperative unless the term 'children' was construed to include grandchildren; second, when the testator has clearly shown by other words that he did not intend to use the term in its proper sense.'' They conclude their argument with this proposition: ''Where there is a gift to several named persons for their respective lives as tenants in common, and a gift over after the death of the survivor, the law implies cross executory limitations among the life tenants until the death of the last survivor.''

We are not advised of the precise nature or value of the property left in trust, beyond the statement in the decree that it consisted of ''a large amount of real estate and personal property.'' While the body of the estate, the corpus, which has been placed under the trust, may be a mixed gift, as would seem to be the case here, it is said by Judge WAGNER, in Collier's Will Case, supra (l. c. 323), that the gift being a mixed one, ''the rules of law applicable to a devise of realty will apply, though, did it exclusively concern personalty, there would be no essential difference, as a few cases will readily demonstrate.'' Estates in personal property are—so far as the nature of the property allows—governed by the same rules as similar estates in real property. [2 Black, Com., *p. 398; 2 Kent Com., Lect. XXXV, *p. 350, par. 3 (14 Ed.).] In the case at bar, these legatees before us took no legal interest in the real property. Their interest in the body of the estate, so far as the matter is now before us for determination, is an equitable one, and equitable estates are governed by the same rules of descent that govern the

duration of legal estates.  [Cornwell v. Wulff, 148 Mo. 542, l. c. 554, 50 S. W. 329.]   This case was overruled in part in Walton v. Drumtra, 152 Mo. 489, 54 S. W. 233, but not on this proposition, of which Judge GANTT says, "it is elemental."   The legal title of the real estate and of the personalty even, in the two trustees originally, now is in the surviving trustee.   Whatever net income the estate yields is to go to the children, who become entitled to receive it, semiannually.

It is distinctly set out that the testator gives, devises and bequeaths all of his estate of whatsoever kind and wheresoever situated to his son George Lich, Jr., and his daughter, Elizabeth Lich, "absolutely and in fee.  In trust however, for the following purposes;" and the trust created and lodged in them by this clause of the will, is to hold and manage the property, to invest the personalty, to let and lease the realty and collect the income of both, and with the consent "of the rest of my children," to improve any part of the property and semiannually account for and divide between "themselves and my other children" the net income of all of the property held under this trust, "giving each of them one-fourth part thereof."  Further along in this same third clause it is set out that it is the wish and purpose of the testator that his estate shall be kept together as long as the trust herein created shall continue, and that if the trustees think it proper, and the children then living shall consent thereto, any part of the real estate may be sold, but it then provides that upon that taking place "the proceeds of such sale or sales shall thereafter be held and managed by said trustee under this trust."   This is the creation of an active trust; not a passive trust. [Walton v. Drumtra, supra, l. c. 497; Heaton v. Dickson, 153 Mo. App. 312, 133 S. W. 159.]   This is the trust with which we have to deal.

Construing this language in its ordinary acceptation and giving to it its ordinary as well as legal

effect, we hold that it puts the fee of the realty and absolute ownership of the body of the personalty in the trustees, and a vested interest in the four children named in the net income derived from that property. We also hold that they take as tenants in common. If it was a devise of real estate alone, section 2878, Revised Statutes 1909, would so determine. While the section relates to interests in real estate, as before said, the rules governing analogous estates in real property are applied to estates in personalty. [See particularly Collier's Will Case, supra, l. c. 323.] Construing the will by the rules we have before recognized, we hold that it is to be gathered that it was the intent of the testator, looking to the words used and what we must hold to have been in his mind—that is disposition of his whole estate and provision for those dependent on him—the natural objects of his bounty—to vest the right to the net income of the estate, during the term and duration of the trust in his four children named, and that he has done this by this will. In brief, that these four children take a vested interest in the net income, the interest of each being one-fourth of that income. That this is a vested interest of the four as tenants in common, in each as to one-fourth, we think is settled by our Supreme Court in Collier's Will Case, supra, l. c. 322, and cases there cited, particularly Doe v. Lea, 3 Term R. 41.

That the testator not only settled a vested interest on these four named children, but that he intended to give to each a one-fourth interest and no more, is, we think, also manifest. Thus it is specifically provided that the advancement of $2500, which was made to the daughter Mary should be deducted out of her one-fourth part of this income—not out of the gross income—and that she should not participate in the income until each of the other three children shall have received $2500 from his estate. We take it that this means that the other three children, until this $2500

was repaid, should each receive one-fourth of the income of the estate until each of them should receive $2500, the $2500 which would have otherwise been paid to Mrs. Weidner remaining in and as of the body of the estate and not distributed to any one, although credited on the charged advancement to Mrs. Weidner. When her one-fourth of the net income which she would otherwise receive, should equal the $2500, the charge which is made for the advancement against Mrs. Weidner is cancelled, the note signed by her husband evidencing the amount and debt is cancelled, and thereafter she receives all of one-fourth of the net income of the property. This we understand has occurred, so that at the time of the death of George Lich, Jr., and possibly some time before then, the net income from the trust property was being divided into four equal parts, each of the sons and daughters named receiving one-fourth thereof. Another part of this third clause which has been before quoted is also significant. In the first place, it is the only sentence or clause in the whole will that refers to the possibility of any of the four children dying before the others. When these words "then living" are there used, it is to be observed that they are used only in connection with a specific designation of what particular children are to consent to a sale of the real estate. Why so particularly confine the requisite consent to "the children then living," if those who were then living were the only ones interested in the estate? Is it not fair to indulge in the presumption that the testator having in mind the possible death of one or more of his children, leaving heirs or others who would have inherited his one-fourth interest, with that also in mind, excluded these others from the number of those whose consent to a sale was requisite?

In the next place, it is here explicitly provided that when the trustees, acting on their judgment and with

the consent of the remaining children then living, shall execute a deed conveying any part of the real estate, that "the proceeds of such sale or sales shall thereafter be held and managed by said trustees under this trust." How held and how managed? No holding of the body and no distribution of the net income is mentioned other than a holding for the four children and a distribution of the net income among four.

The clause of the will providing that the trust shall terminate on the deaths of all four of the children named, has nothing to do with the character of the estate. All that it does is to fix the duration of the trust: that and no more. Referring again to Collier's Will Case, it is here held that words of similar import to those here used, postponing the division and partition of the body of the estate, do not determine the character of the estate and do not prevent the vesting of the interests of the legatees named in their several shares. Judge WAGNER says (l. c. 326): "The testator gives, devises and bequeaths all the rest, residue and remainder of his estate to the trustees, for the uses and purposes expressed. It is immaterial that the money is not to be paid or the property divided till a future period. It is scarcely distinguishable from a bond for the payment of money at a future date. It is *debitum in presenti* though *solvendum in futuro*." Again quoting from Collier's Will Case (l. c. 321), and as preliminary to the above, that learned judge says: "But there are certain rules of law which have grown up and become firmly fixed in the interpretation of wills, which no court is at liberty to disregard, unless the language of the testator, in making the devise, plainly requires it; and one of these rules is, that all estates shall be considered vested rather than contingent," the effect of which is said to be, "that property which is the subject of any disposition, whether testamentary or otherwise, will belong to the object of the gift immediately on the instrument

taking effect, or so soon afterwards as such object comes into existence, or the terms thereof will permit. As therefore a will takes effect at the death of the testator, it follows that any devise or bequest in favor of a person *in esse* simply (without any intimation of a desire to suspend or postpone its operation) confers an immediately vested interest.''

''A pecuniary legacy, whether charged on land or not, given to a person *in esse* simply, i. e., without any postponement of payment, is, of course, vested immediately on the testator's decease.'' [1 Jarman on Wills (6 Am. Ed.), *p. 792.] After illustrating the application of this rule, Mr. Jarman says (*p. 793): ''Thus, even where the payment is made to depend on a contingency, which might, abstractly viewed, appear to spring from considerations personal to the legatee, as in the case of a sum of money directed to be raised for a person at the age of twenty-one; yet the vesting will take place immediately on the testator's decease, if such be the declared intention. And if such intention, though not expressly intimated, can be collected from the context, the exclusion of either rule (that is as to failure and falling in of the legacy) will be no less complete.'' [See, also, same author, *p. 795, par. VI.]

The species of estate which each of the four children took was, as at common law, as ''tenants *per auter vie*.'' If any one of these children die before the other three, the estate continues and vests in the personal representatives of the deceased tenant, and so continues until the death of all of the four children of the testator. If the tenant for life has conveyed it away, his grantee will hold it, unaffected by his death. [Tiedeman, Real Property (3 Ed.), secs. 60 to 64.]

Moreover, this was so far a vested interest in one-fourth of the net income as to each child named, that it was not only assignable but could be reached by the creditors of each. [Heaton v. Dickson, supra.]

The duration of the trust is "so long as any of my children are alive, and upon the death of the last survivor it shall cease." When this will undertakes to dispose of the estate at the end of the trust, it provides for its distribution on the death of the last of the four children, and the language used is "the estate shall then be divided among the descendants of my said four children, said descendants taking *per stirpes* and not *per capita*." It is to be observed of this clause that it does not provide for distribution on the death of the last of the four children among the grandchildren, as seems to have been thought by counsel and by the learned trial court, but it is then to be divided among "the descendants of the four children." The word grandchildren does not occur in the will at all. It cannot therefore be claimed that a vested remainder was lodged in the grandchildren or any one else by these terms. No one can now say who will be the descendants capable of taking. The taker might not be a grandchild. Hence there is no vested remainder even in the grandchildren.

"Descendants is a good term of description in a will and includes all who proceed from the body of the person named; as (children) grandchildren and great grandchildren." [Black, Law Dict.] As no one can say who will be the descendants of the children when all of the four die, the remainder is a contingent remainder. [Emison v. Whittlesey, 55 Mo. 254, l. c. 258.]

It is finally argued by learned counsel for appellants that by a failure of the testator to provide for what shall happen in case of the death of any one of the four before all of those four are dead, that the law relating to cross executory limitations among living tenants comes into play; that where there is a gift to several named persons for their respective lives, as tenants in common, and a gift over after the death of the survivor, that the law implies cross execu-

tory limitations among the living tenants until the death of the last survivor. Counsel cite several authorities which they claim support this proposition. We have examined all of them, and do not think they help them here. Turning to the citation which counsel makes of 2 Jarman on Wills (6 Am. Ed.), we think that it will be found not only not to support the contention of counsel, but that it is against that contention. That author says (*p. 1359), that to introduce cross limitations among devisees where it is claimed that there was a partial intestacy, "would be to divest a clear absolute gift upon reasoning merely conjectural; for the argument, that the testator could not intend the retention of the property by the respective devisees to depend upon the prescribed event not happening ·to the whole however plausible, scarcely amounts to more than conjecture. He may have such an intention; and if not, the answer is *voluit sed non dixit.*" Quoting from Re Hudson, Hudson v. Hudson, L. R., 20 Ch. D. 406, a case also relied on by counsel for appellants, Mr. Jarman gives as one of the rules deduced from the authorities by Mr. Justice Kay in that case to be that, "Cross executory limitations in the case of personal estate like cross remainders of real estate, are only implied to fill up a hiatus in the limitations, which seems from the context to have been unintentional;" and that "they cannot be implied—as of course cross remainders could not—to divest an interest given by the will."

It is manifest throughout this will that the testator looked to the division of the income of his estate, during the existence of the trust, into four equal parts, and while the estate was to be kept together during the trust, on the termination of the trust the estate was to be divided into four equal parts; even then it was not to go to the heirs generally of the children, but to the descendants of the four children *"per stirpes* and not *per capita,"* each *"stirpes"* taking

one-fourth. We do not think that there is room here for the application of the law relating to cross limitations. Even the cases cited by counsel for appellants all show that that rule is not a favorite of the law. The effect of construing cross limitations here would be to deprive those dependent upon the estate of the children of the testator of all support from or advantage of that estate during the lives of their uncles and aunts. Surely that is not to be assumed to have been in the mind of this testator, from anything to be found in his will, and no court will construe such a limitation into a will in the absence of a clearly expressed direction or intent of the testator.

In the Collier Will Case, supra, it was contended that as there was no devise over of the respective interests which were given to each of the four children named, it showed the purpose of the testator to be that the devisees should not receive their shares in any and all events. Judge WAGNER says that if that were so as to this will and no interest had vested, it would follow that if any of the devisees died before the one named attained the age of twenty-one years (the duration of the trust being fixed until that one attained that age) leaving children, those children of the devisees would be wholly unprovided for. This is the precise contention that is here made. Answering that contention, however, Judge WAGNER says (page 326), that the court will not believe such to have been the intention of the testator. "Parents are not generally actuated by such intentions, and unless they are apparent and unmistakable, such intentions will not be ascribed to them." See also Cowles v. Cowles, 56 Conn. 240, l. c. 248, where the Supreme Court of Connecticut said practically the same thing.

It is true that in this will, as in the Collier will and that construed in Cowles v. Cowles, supra, there is no mention of grandchildren. None was necessary, if a vested interest was in the child—the parent. So

far from holding that the word "child" here meant "grandchild," we hold to exactly the contrary. To give that meaning to the word "child" here, would be to attach a limitation to the interest which, as we hold, was a vested one in the named children, with all the incidents of a vested interest—that is absolute power of disposition by the child.

If we are to assume that the testator purposely omitted to name the children of his children—his grandchildren—with the idea and intent that on the death of one or more of his own children, the share of the one dying before the death of all was to revert to the surviving children to the exclusion of the children of his own children, we must impute to him a lack of that natural affection of one for his own, as said in the Collier and Cowles cases, and we know that the common law of nature is exactly opposite; that is, the rule is general that the affectionate leanings and solicitude of the grandparent is apt to be stronger to the grandchild than to his own child. As said in Collier's Will Case, supra, l. c. 327, of that will, so it is true of this: "There is nothing to indicate that the testator intended to exclude a child from partition by death, for there is no such expression in his will, nor is there any devise over in view of such an event."

In brief, treating this will as a whole, interpreting it as a whole, it is clear that the intention of this testator, as manifested throughout, is, that during the lives of all four of his children, his whole property is to be kept together as one body; the income only is to be divided; each of the testator's four children had a vested interest in one-fourth of the income and profit during the life of the trust, that interest continuing not for the life of each merely but for the life of the survivor of the four, and vesting immediately on the death of the testator. We can read this will in no other way. It does not present a case to which the doctrine of cross executory limitations has any applica-

tion whatever. So holding, it follows that there was no failure of testamentary disposition of each share of the income.

We construe this clause of the will to mean that when and as each of the four children of the testator dies, until the death of the last of the four, that child dying intestate, the one-fourth of the income vested in that child descends as provided by law in case of the personal property of the estate of that child, to be disposed of as provided by law.

In the case at bar the trial court found that the widow of George Lich, Jr., took no interest in the estate of her husband. While the widow did not appeal, the trustee by appeal has brought up the whole will for our construction. We must construe it irrespective of the action of the trial court. No agreement of parties as to the matter of law can conclude this or any court. [Aubuchon v. Bender, 44 Mo. 560, l. c. 570.] The right of the widow, her husband dying and leaving children, under section 349, Revised Statutes 1909, to take a child's part, is one which is so absolute that she takes it even without election. [Hayden's Admr. v. Hayden's Admr., 23 Mo. 398.] Her husband cannot, by any fraudulent contrivance, divest her of it. [Rice v. Waddill, 168 Mo. 99, 67 S. W. 605.]

We are not advised of the condition of the estate of George Lich, Jr., hence we make no order, and the circuit court will make none, as to the distribution of this estate, leaving it to be hereafter determined between the trustee and the representatives of George Lich, Jr., in court and by a proper action if necessary, on the facts as they may be and on the law. What we do determine, however, is that there are no facts here presented to us which justify exclusion of the widow and that part of the finding and decree is disapproved. It may be that the widow has lost her right, as she may do, by her own act of renunciation or otherwise. It may be that no administration of the estate of

George Lich, Jr., is necessary and that the one-fourth of the net income can be paid over direct to the parties in interest without the intervention of an administrator. [Richardson v. Cole, 160 Mo. 372, 61 S. W. 182.] That, however, neither this court nor the circuit court is to determine in this case. The safe and correct course is to leave this to the future action of the trustee and of those entitled to the share of George Lich, Jr., now deceased.

We have given our construction of this will. That construction will be followed in the administration of this share of this decedent, George Lich, Jr.

The circuit court further erred in finding that at the termination of the trust Angela Lich, the daughter of George Lich, Jr., "shall and will be seized and possessed of and become the owner of the one-fourth interest in said trust property." That is disapproved. The circuit court should have made no such finding or order in this case, nor do we give any direction as to what shall be done when the time for ultimate distribution of the estate arrives. As said in Draycoot v. Wood, 8 L. T., N. S. (March-September, 1863) 304, l. c. 305, "it was a very unusual thing to make a declaration of an interest ulterior to an existing life-interest." [See, also, Cowles v. Cowles, supra, l. c. 249.]

The judgment of the circuit court is reversed and the cause remanded with directions to the court to enter up a decree construing the will as here indicated. It is further ordered that the costs of this appeal be taxed against appellants, payable out of the trust estate. *Nortoni* and *Caulfield, JJ.,* concur.