CHARLES A. EATON, ADMINISTRATOR AND TRUSTEE, *vs.* LUCY J. EATON ET ALS.

First Judicial District, Hartford, May Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

In construing a will this court will not undertake to pass upon questions which are premature or based upon contingencies which may never arise.

A testamentary disposition to the children of a donee for life, in case such donee dies either before or after the testator, contemplates a substitutionary gift in the first contingency, and, in the second, a limitation over after a life estate.

A direction to trustees "to pay to" persons specified, certain portions of the trust estate upon the death of a life tenant, imports a gift of the principal itself.

A testator who died in 1889 gave a beneficial interest in equal portions of his residuary estate to each of his two daughters for life, with remainder in fee to their respective children, and then provided that the lineal "descendants" of any deceased child should take the part of such share as their parents would have taken if alive. *Held:*—

1. That the attempted gift to descendants was void, as contrary to the statute against perpetuities (since repealed) which was in force at the testator's death.
2. That this provision was readily separable from the other provisions of the will, and that its elimination would not work injustice or defeat the main intent and purpose of the testator.
3. That the failure of the gift over to the "descendants" did not invalidate any of the bequests prior in order.

4. That the remainders to the children of each daughter vested in point of right, upon the testator's death, in such children as a class, which would open to admit after-born children.
5. That in making the gift to the "children" of each daughter, the testator intended to include an illegitimate—and at that time the only—child of one of his daughters, who was then seven years old and of whose existence the testator was presumably aware.

The law of this State has never recognized the harsh common-law principle that a bastard is the child of nobody, but, on the contrary, has always treated such offspring as the child of its mother and accorded it rights incident to ·that relation, including the right, under our statute of distribution, to inherit her property. Accordingly, when a testator makes a gift to the children of his daughter, he will be held to have included all her children, legitimate and illegitimate, unless a different intent is to be gathered from the will read in the light of the surrounding circumstances.

Defeasance conditions in a will are not favored.

An express gift in fee is not to be cut down to an inferior· estate by subsequent provisions less positive and direct.

Argued May 5th—decided June 10th, 1914.

SUIT to determine the validity and construction of the will of Reuben Eaton of Kent, deceased, brought to and reserved by the Superior Court in Litchfield County, *Case, J.*, upon the facts alleged in the complaint, for the advice of this court.

Reuben Eaton died in 1889 leaving a will with two codicils duly probated, and also a widow and the four children named in the will, who were his only heirs at law. By his will he left the residue and remainder of his estate in trust to three trustees, of whom the plaintiff is the sole survivor. By the terms of the trust the trustees were directed to pay to the widow and the children the income of certain specified sums during their natural life. The will then proceeded as follows:—

"Sixth: Said trustees are directed to divide the rest and remainder of my estate including said sum of six thousand dollars, after the death of my wife and said sum of two thousand dollars, if my wife dies before me, into four equal portions, and after paying them-

selves a reasonable sum annually for the care of the whole trust fund, said trustees are directed to pay annually to each of my said children aforesaid the use of, and income from said each one quarter portion of my said remaining estate, during the natural life of each, which said remaining estate I give to said trustees as aforesaid for such purpose.

"In using the word share or shares hereinafter in this will I mean the whole sum held in trust by said trustees for the benefit of each of my said children severally.

"Seventh: At and after the death of either of my said sons, respectively, whether they die before or after my decease, said trustees are directed to pay annually to the widow of such deceased son, if any there should be during her widowhood the use of, and the income from one-third of the share of her said deceased husband, and said trustees are directed to pay, to each of the children of such deceased son an equal portion of his said share including that the use of which is to be paid to such widow until her decease or marriage discharged of said trust; the lineal descendants of any deceased child to take the part of such share as their parent would have taken if alive, and I hereby give, devise and bequeath the same to such children and descendants share and share alike, to each and their heirs, but if any such children or descendants, at the death of such son, are under the age of twenty-one years, my said trustees shall have the care and management of such estate and the same shall be in trust until such children and descendants arrive respectively at the age of twenty-one years, and this provision shall apply to each of the shares of my said sons.

"Eighth: At and after the death of either of my said daughters, respectively whether they die before or after my decease, the said trustees are directed to pay

to each of the children of such deceased daughter an equal portion of her share, discharged of said trust; the lineal descendants of any deceased child to take the part of such share as their parent would have taken if alive; and I hereby give devise and bequeath the same to such children and descendants, share and share alike to each and their heirs, but if any such children or descendants at the death of such daughter are under the age of twenty-one years, my said trustees shall have the care and management of such estate and the same shall be in trust until such children or descendants arrive respectively at the age of twenty-one years and this provision shall apply to each of the shares of my said daughters.

"Ninth: If any of my said children shall die without any lineal descendants living at the time of his or her death, whether he or she dies before or after me, then his or her share mentioned herein shall go to his or her surviving brothers and sisters in equal portions, the lineal descendants of any deceased brother or sister taking the portion of their parent but the same is to be held in trust by my said trustees, proceeded with and finally disposed of, discharged of said trust in the same manner and as part of the shares given for the use of and to each of my said children.

"Tenth: If all of my said children should die without any lineal descendants living at the time of the death of each, then I direct my trustees to pay all my said estate to those persons who would be my heirs at law if I died without leaving lineal descendants living at the time of my death, discharged of said trust and in such case I hereby give, devise and bequeath all my said estate to such persons to them and their heirs."

All of the testator's children are still living except Ann Jane Stuart, who died March 2d, 1913, intestate, and leaving surviving her a legitimate daughter,

Gertrude Stuart Benson, who was born in 1892, and also a grandson, Louis Eaton Sterry, born in 1893, the illegitimate child of Nora Estelle Eaton, who was the illegitimate daughter of said Ann Jane Stuart. Nora was born in 1877 and died in 1896. The administrator upon her estate is included among the parties to the action, as is also the administrator upon the estate of Ann Jane Stuart.

The estate in the hands of the trustee consists of personalty only. Neither of the codicils has any bearing upon the questions at issue. The following are the questions upon which the Superior Court is asked to give its advice:—

"1. Whether, upon the death of said Ann Jane Stuart the entire share of said trust estate held for her benefit during her life should be paid to her said daughter Gertrude Stuart Benson.

"2nd. Whether, upon the death of said Ann Jane Stuart the entire share of said trust estate held for her benefit during her life should be paid to her said daughter Gertrude Stuart Benson and her said grandson Louis Eaton Sterry, share and share alike.

"3rd. Whether, upon the death of said Ann Jane Stuart, any of said share of said trust estate held for her benefit during her life is intestate estate, and, if so, what proportion thereof, and to whom the same should now be paid and distributed.

"4th. Whether any of the provisions, and if so, which provisions, of the said eighth paragraph of the residuary clause violate the statute against perpetuities in force at the time said will and codicils were made and said Reuben Eaton died.

"5th. Whether the provision in said eighth paragraph of said residuary clause, viz., 'the lineal descendants of any deceased child to take the part of such share as their parent would have taken if alive;

and I hereby give, devise and bequeath the same to such children and descendants share and share alike to each and their heirs' is invalid because of such statute against perpetuities.

"6th. Whether, in case the provision quoted in the preceding paragraph is invalid because of said statute against perpetuities, the property which would otherwise pass thereby is intestate estate or belongs and passes to said Gertrude Stuart Benson, daughter of said Ann Jane Stuart.

"7th. To whom and in what proportion the share of said trust estate held for the benefit of said Ann Jane Stuart during her life goes and of right belongs."

*Howard F. Landon*, for the plaintiff.

*John F. Addis*, for Louis Eaton Sterry.

*Leonard J. Nickerson*, for Frank B. Munn, administrator, and Gertrude Stuart Benson.

*Thomas F. Ryan*, for Edward L. Eaton.

PRENTICE, C. J. The questions upon which the Superior Court is called to give its advice arise out of the provisions of paragraph eight of the will, as affected by the death, after the testator, of his daughter Ann Jane Stuart leaving a daughter born in lawful wedlock and a grandson, the illegitimate son of an illegitimate daughter of Mrs. Stuart, who died before her mother. In view of the situation thus created, the trustee under the will desires to be informed, and is entitled to be informed, as to the legal rights of parties in interest brought into active conflict by events as they have occurred. Other questions suggested by the provisions of the will, which might by possibility arise in contingencies which have not arisen and may not arise,

although perhaps within the comprehensive language of the questions propounded, are prematurely presented for determination. *Smith* v. *Jordan*, 77 Conn. 469, 470, 59 Atl. 507. Furthermore, adequate foundation for their determination is not laid in the facts appearing of record. We shall confine our consideration to the field of present interest indicated.

The paragraph in question provides for a disposition of a share of the testator's residuary estate "at or after" the death of each of his two daughters, whether that event should occur before or after his own death. In so far as this disposition contemplated the former contingency, the gifts over were substitutionary; in so far as they contemplated the latter, they created limitations over after a life estate. As all of the testator's four children named in the will survived him, the paragraph in question has only to be considered in the latter aspect.

The direction to the trustees which the paragraph contains, "to pay to" sundry persons specified portions of the trust estate after the death of a daughter, imports a gift. *White* v. *Smith*, 87 Conn. 663, 667, 89 Atl. 272; *Allen* v. *Almy*, 87 Conn. 517, 523, 89 Atl. 205.

An attempted gift to "descendants" of children of the testator's daughters living at his death would be void as being contrary to the statute against perpetuities. *Tingier* v. *Chamberlin*, 71 Conn. 466, 469, 42 Atl. 718. The provision by which it is directed that the lineal descendants of any deceased child should take "the part of such share as their parent would have taken if alive," and the words, a line or two later, "and descendants," whereby such descendants are linked with children as donees in remainder, amount to precisely that, and must therefore remain without operative effect. The elimination of this provision does not result in such a destruction of the testator's testamen-

·tary scheme and purpose that its associated provisions may not stand. The legal can be readily separated from the illegal without doing injustice or defeating the testator's main purpose, and his intent be thus effectuated in so far as the law will permit. *White* v. *Allen,* 76 Conn. 185, 190, 56 Atl. 519. Neither does the failure of the gift over to "descendants" invalidate any of the gifts prior in the order of donation. *Farnam* v. *Farnam,* 83 Conn. 369, 385, 77 Atl. 70; *Cody* v. *Staples,* 80 Conn. 82, 85, 67 Atl. 1; *Johnson* v. *Webber,* 65 Conn. 501, 514, 33 Atl. 506.

The eighth paragraph as it presents itself for our further consideration, disregarding the unimportant trust provision in the case of minors, thus becomes one in which the testator gave over to the children of each of his two daughters respectively, after life estates to the latter, the one-quarter share of the trust estate of which such daughter was entitled to receive the income during her life discharged of the trust; the children of each daughter to share and share alike between them, and the property so bestowed to be to the recipients and their heirs. The gifts to the daughters were life estates; the limitations over to their children, remainders which, upon the decease of the testator, vested in point of right in the child or children of each group who were then alive as a class, such class opening to admit after-born children who, upon their birth, would take a vested interest. *Norton* v. *Mortensen,* 88 Conn. 28, 89 Atl. 882; *Bartram* v. *Powell,* 88 Conn. 86, 89 Atl. 885.

The estates which thus vested are expressly made estates of inheritance. Are they, however, indefeasible, or are they such as would be defeated by the happening of a condition subsequent? If so, the remainder is none the less a vested one. Gray on Perpetuities (2d Ed.) § 108.

The ninth paragraph of the will provides for the defeat of any interest already vested in children of a child of the testator in the contingency that all of the children of such child of the testator should die before their parent. Doubtless also the provisions of the eighth paragraph in favor of descendants of children, if they had been valid, would have subjected to defeat any interest which had already become vested in point of right in any child of the testator's daughters in the event of its death before the period of distribution arrived. *Johnson* v. *Webber*, 65 Conn. 501, 514, 33 Atl. 506; *Mitchell* v. *Mitchell*, 73 Conn. 303, 308, 47 Atl. 325. That provision, however, being void, we fail to discover any sufficient reason for holding the vested interest in a child of a daughter of the testator a defeasible one, save under the conditions described in the ninth paragraph. Defeasance conditions are not favored. *Scovill* v. *McMahon*, 62 Conn. 378, 388, 26 Atl. 479. Neither is an express and positive gift in fee to be cut down by subsequent provisions less express and positive. *Fanning* v. *Main*, 77 Conn. 94, 99, 58 Atl. 472.

We are thus brought, by the illegitimacy of Nora Estelle Eaton, to the question whether or not she, as an illegitimate child of Ann Jane Stuart, is to be regarded as the latter's child under the provisions of the will, and as such entitled to be admitted into membership of the class of Ann Jane Stuart's children.

At English common law an illegitimate was the child of nobody. This proposition was tenaciously adhered to, and its logical corollaries adopted into the law. Among these corollaries was one that the word "child" or "children," when used in a statute, will, or deed, was to be interpreted as including legitimate children only. Another corollary was, that out of the relation of an illegitimate to his mother or putative

father, there could arise no right, duty, or obligation. "A bastard was the child of nobody; he was not entitled even to a name. It is however gravely asserted by the text writers that he might gain one by reputation. He did not take his mother's place of settlement, but was settled wherever he chanced to be born. As he was related to nobody he could have no heirs, except of his own body; and so if he left no descendants, his property escheated, and now, by law, escheats to the crown." *Dickinson's Appeal*, 42 Conn. 491, 500. He could not inherit even from his mother. This harsh and inhumane doctrine of the English common law was taken over into the common law of practically all American jurisdictions. Its rigors, however, are such that an appeal has very generally been made to statutes to mitigate some of them. These statutes, being in derogation of the common law, have been strictly construed, so that no greater relaxation of the strict common-law rules has been permitted than the statutes plainly authorized. *Dickinson's Appeal*, 42 Conn. 491, 509.

In most, if not all, of the jurisdictions adopting the common-law rules, statutes have been enacted entitling illegitimates to inherit from the mother. This right of inheritance, however, is founded entirely upon the statute, and does not arise from a recognition of the relation of parent and child between the mother and her offspring. The statutes have not changed or undertaken to change the general attitude of the law upon the subject of the relations of the parties.

This State is unique in that neither the fundamental principle of the common law, that an illegitimate was the child of nobody, nor any of its natural corollaries, has ever been engrafted upon our common law. From the earliest times the proposition that a bastard is the child of nobody has been repudiated, and our law has

proceeded upon the directly opposite principle, which recognized an illegitimate as the child of his mother. Our numerous cases touching the various aspects of the question have consistently held to the doctrine stated and its logical consequences, with the result that a full recognition has been given to the general rule, distinctly contrary to that prevailing elsewhere, that the relation of mother and child, whether legitimate or illegitimate, is one from which those rights, obligations, and status arise which ordinarily grow out of the relation of parent and child.

A review of our decisions touching the question of both settlement and inheritance, as given in *Dickinson's Appeal*, 42 Conn. 491, need not be here repeated. The strong and emphatic language which our court has repeatedly used upon the subject of a bastard's status is, however, worthy of notice.

"The common law of England, which has been urged in this case, is not to be mentioned as an authority in opposition to the positive law of our own State; and nothing can be more unjust, than that the innocent offspring should be punished for the crimes of their parents, by being deprived of their right of inheritance by the mother, when there doth not exist amongst men a relation so near and certain as that of mother and child." *Brown* v. *Dye*, 2 Root, 280, 281.

"By the common law, a bastard is *nullius filius*, and derives nothing from his parents; for he has no parents; and is settled where born. . . . But it has been discovered in this State, that a bastard is the child of his mother, and capable of inheriting an estate, and deriving a settlement from her." *Woodstock* v. *Hooker*, 6 Conn. 35, 36.

"Upon this subject, our whole system differs entirely from that adopted in Great Britain. The fundamental maxim of the common law, that a bastard is

*filius nullius,* is entirely rejected here; and such a child is here recognized by law as a child of its mother, with all the rights and duties of a child." *New Haven* v. *Newtown,* 12 Conn. 165, 170.

It is by reason of our recognition of the relation of parent and child between a mother and her illegitimate offspring, that no statute has been needed in this State to accomplish results which humanity and natural justice dictated, and which could be arrived at elsewhere only through statutory intervention. Our recognition of the relation of child to mother has rendered legislation unnecessary, for instance, to entitle an illegitimate to inherit from his mother, his mother from him, brothers and sisters from each other, although one or both were illegitimate offspring, and collateral inheritance to proceed through illegitimate lines.

The case of *Heath* v. *White,* 5 Conn. 228, is particularly instructive in this connection, especially for the reason assigned in it for sustaining the right of inheritance. The question presented was as to the right of an illegitimate to share in the distribution of his mother's real estate. The right of the illegitimate rested solely upon the statute governing the descent of intestate estate and that provision of it which made the property descend to and among "the children and such as legally represent them" of the deceased owner. The question, therefore, was whether the illegitimate was to be regarded as a child of its mother. In commenting upon the common-law situation, CHIEF JUSTICE HOSMER said that it was not the meaning of the word "child" or "children" that, at English common law, prevented a bastard from inheriting his mother's estate, but that persons of that description were not by that law permitted to succeed to their parent. He further said that undoubtedly in England and in those

States which have adopted the English rule, the term "child," in reference to succession by inheritance, must be understood to mean a legitimate child; but added that "the subject matter abridged the customary meaning of the word." He then went on to say that the position to be established by the defendant was therefore not relative to the proper meaning of the word "children," "for as to this there exists no possible controversy," but whether the English law relative to succession by illegitimates is to be recognized as the law of this State, and the term "child" and "children" thereby limited in its application to legitimates. The conclusion reached, after a repudiation of the common-law rule, was in favor of adopting the plain meaning of the words of the statute, and giving to them their ordinary signification, comprehending the illegitimate as well as the legitimate offspring of mothers.

The same subject had an even fuller consideration in the later case of *Dickinson's Appeal*, 42 Conn. 491, where the question was whether the legitimate children of an illegitimate daughter of a sister of the testatrix, who died leaving no nearer blood relative than a cousin, were parties in interest as heirs at law of the testatrix. The general subject of the status of illegitimates was there given exhaustive consideration, the peculiar attitude of our law affirmed and emphasized, and a conclusion in favor of the appellants reached.

The significant feature of our cases is that the right of an illegitimate to inherit, his status in the matter of settlement, and the obligations which are recognized as upon him as respects his mother, are derived solely from a recognition of the existence of the relation of parent and child between the mother and her offspring, "agreeable," as our first reported case says, "to the law of nature and reason." *Canaan* v. *Salisbury*, 1 Root, 155, 156.

The word "children" in our statute of distributions is interpreted to embrace a mother's illegitimate as well as legitimate children, for the simple reason that the law regards the former as well as the latter as her children. In a word, the natural corollary of the English rule that the word "child" or "children," when used in a statute, is to be restrained to signify legitimates only, is done away with, as it logically must be. That corollary is the logical consequence of the proposition that the illegitimate is the child of nobody. When that proposition is transposed into ours, that an illegitimate is the child of its mother, then all logical foundation for the corollary that the word "child" or "children" in statute, will, or deed, is to be interpreted as limited to legitimates, disappears, and the logical corollary becomes the reverse, so that presumptively the word "child" or "children" in a will embraces offspring legitimate and illegitimate. That is the principle to be applied in the present case, so that when the testator made his limitation over to the children of his daughters, he will be held to have included all their children, unless a different intent is to be gathered from the will, read in the light of the surrounding circumstances.

We are unable to discover in this will, so read, any intent upon the part of the testator to thus restrict the natural meaning of the words he employed. On the contrary, he, at the time his will was executed, presumably had full knowledge of the existence of the illegitimate child, then seven years of age, of his daughter and of its illegitimacy. His daughter, at that time, had no other offspring. The provisions of his will were therefore presumably made in contemplation of this situation. Had he not intended that the illegitimate child should share in the fruits of his bounty as a child of his daughter, it is scarcely conceivable that he would have been satisfied to use the unrestricted language that

he did, and language which, in ordinary speech, knows no distinction between legitimates and illegitimates.

The Superior Court is advised that no part of the trust estate in the plaintiff's hands heretofore held by him for the benefit of Ann Jane Stuart during her life is intestate estate of the testator; that Louis Eaton Sterry is not entitled to receive from the plaintiff any part of said trust estate so held; and that Gertrude Stuart Benson and John F. Addis, as administrator of the estate of Nora Estelle Eaton, deceased, are entitled to receive the whole amount of the trust estate so held in equal shares between them.

No costs in this court will be taxed in favor of any of the parties.

In this opinion THAYER, RORABACK and BEACH, Js., concurred.

WHEELER, J. (dissenting). I am unable to concur in that part of the opinion which holds that the illegitimate son of the illegitimate daughter of Mrs. Stuart was intended by the testator to be included in the devise under the eighth clause of the will of Reuben Eaton, the father of Mrs. Stuart.

By the will the testator gave the greater part of his estate to trustees, and, after directing them to pay certain portions of the income to his wife and children, directed the trustees to divide the income of the remainder of his estate into four portions and pay to each of his children one-fourth part of the income during the life of each. Two of these children were daughters, of whom Mrs. Stuart was one.

Under the eighth clause, at the death of either of his said daughters, the trustees are directed "to pay to each of the children of such deceased daughter an equal portion of her share, discharged of said trust; the lineal

Eaton *v.* Eaton.

descendants of any deceased child to take the part of such share as their parent would have taken if alive."

Mrs. Stuart died leaving an illegitimate son of her illegitimate daughter and a legitimate daughter.

The sole question on this part of the case is: did the testator intend by the devise to the children of his deceased daughter to include illegitimate as well as legitimate children?

The opinion asserts that, in ordinary speech, by the use of the word "children," we mean illegitimate as well as legitimate children. This seems to me at variance with common usage.

Again, the opinion assumes that our failure to accept the common-law doctrine that a bastard is *nullius filius* led to the corollary that the word "children," in a will, embraces illegitimate as well as legitimate offspring; unless a different intent is to be gathered from the will, read in the light of surrounding circumstances. It assumes, too, that a different interpretation follows from that prevailing in those jurisdictions which by statute have legislated upon this subject. These statutes recognize the illegitimate offspring as the child of his mother and permit him to inherit from and through her. They give, by express enactment, what our court declared to be the law of this jurisdiction. And, of necessity, the same results should follow in each case. From the fact that the law recognizes the illegitimate as the child of his mother and permits him to inherit by and through his mother, to the position that any testator, when he makes a devise to the children of a woman, intends to include her illegitimate as well as her legitimate children, seems to me a rather long jump. This construction does not follow as a corollary from our doctrine any more logically than it follows from the statutes of other jurisdictions which have placed their law upon a parity with ours.

In most of these States where by statute they have changed the common law, the word "children," when used in a will, deed, or contract, means legitimate children, unless the will, as read in the light of the surrounding circumstances, shows a plain contrary intent. This, I believe, to be the almost universally accepted construction. "The natural and legal import of the term children is legitimate children." *Heater* v. *Van Auken*, 14 N. J. Eq. 159, 164.

In order to avoid the consequences of this opinion, it will be necessary hereafter for each testator to write the word legitimate, or its equivalent, before each devise to children, heirs, or issue of a woman. I venture the view that the profession of the State have never so defined and used these terms in making such devises. Nor do I believe that the ordinary testator so intends when he makes use of these terms in a devise to a woman.

If Mr. Eaton had devised the life use of the residue of his estate to his children with remainder over to their children or issue, and one daughter and one son died each leaving an illegitimate child, as I understand the opinion, the illegitimate child of the deceased daughter of the testator would take, while the illegitimate child of the son would not. In one case children includes illegitimates; in the other, the same word has a different meaning and excludes the illegitimate from the devise. This inconsistency must result, else it must be held that in every will the word children embraces illegitimates as well as legitimates, whether applied to a devise to the children, or issue, of a mother or a father.

It would be a strange and prideless grandfather who intended to perpetuate in his will his own daughter's misfortune by intending to include among her children the offspring of her frailty. Men and women as a rule do not expose their family secrets in that fashion. And

Reuben Eaton, so far as the record before us shows, did not in my opinion intend otherwise than his fellows would have intended. He did not intend to provide for a line of illegitimates.

By chapter 14 of the Public Acts of 1876 (p. 81) an addition to our statute of distributions was made. This Act was passed immediately following *Dickinson's Appeal*, 42 Conn. 491, and in its present form (General Statutes, § 396) reads as follows: "Children born before marriage whose parents afterwards intermarry shall be deemed legitimate and inherit equally with other children." This clearly expressed the legislative intent, and it would seem that the further legitimation of illegitimates should be expressed by legislative enactment rather than by judicial decision.

I am of the opinion that the entire share of the testator's estate held in trust and devised to the children of Mrs. Stuart should be paid to her legitimate child.