FLORENCE MOORE ET ALS. *vs.* ROBERT P. SAXTON ET ALS. (FLORENCE MOORE ET ALS. APPEAL FROM PROBATE).

First Judicial District, Hartford, January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In aid of uniformity and stability in the matter of personal status, the legitimacy of children, established by the law of the State of their parents' domicil at the time of their birth, should be recognized and given effect by the courts of other States, unless such recognition would violate some positive local enactment or offend the settled public policy of that jurisdiction; for otherwise the shifting conditions and uncertainties respecting a child's personal status in the different States of our country, would not only prove inconvenient but would lead to unfortunate inequalities and actual injustice.

In the present case the question was whether the three children of a deceased brother of a Connecticut intestate were entitled to share with the decedent's other nephews and nieces in her estate. These children, the issue of a bigamous marriage, were born in California where their parents were domiciled and where the children now reside. By a statute of that State enacted in 1850 and still in force, the issue of all marriages null in law are declared legitimate, and the California courts have held that such statute applies to the children of a bigamous marriage. *Held* that there was no positive rule of law nor any established public policy of this State which would prevent its courts from recognizing the personal status of these children acquired under the California statute; and that they were therefore entitled to share with the other nephews and nieces of the Connecticut decedent in the distribution of her estate.

Argued January 5th—decided March 15th, 1916.

APPEAL from an order and decree of the Court of Probate for the district of Winchester ascertaining the heirs at law and distributees of an intestate estate and ordering distribution accordingly, taken by the plaintiffs to and tried by the Superior Court in Litchfield County, *Reed, J.;* facts found and judgment rendered in favor of the defendants, confirming the action of the

Court of Probate, and appeal by the plaintiffs.  *No error.*

Ruth Deborah Richards, a resident of the town of Winchester in this State, died intestate on January 12th, 1914, leaving personal estate and no husband, descendants, brothers, sisters, or parents.  Her estate is in process of settlement in the Court of Probate for the district of Winchester and is ready for distribution. That court passed its order and decree ascertaining and determining the heirs and distributees, from which order and decree this appeal was taken.

Three sisters of the decedent predeceased her, each leaving a child or children who still survive.  A brother, Charles Platt Saxton, also died before her, leaving three children by an unlawful and bigamous marriage with one Emma Byrne, to wit: Robert P. Saxton, Myra A. Watson and Hazel E. LeDuc.  Charles Platt Saxton was first married, in the State of New York, in 1871, to a woman who survived him, and from whom he was never divorced.  Their only child died in infancy.  On December 29th, 1877, Saxton, still remaining a resident of New York, entered into a bigamous marriage in Hoboken, New Jersey, with Emma Byrne.  Following the marriage they lived together as man and wife during the remainder of his life, first in New York, then in several other places to which his business carried him, and finally in California, where they became domiciled in 1884 and remained domiciled until 1898.  He died at Reno, Nevada, February 24th, 1899.  His three children by Emma Byrne were all born during the time that they were domiciled in California, the first in 1885 and the last in 1888.

Emma Byrne married Saxton in entire good faith, and without any knowledge of his prior and existing marriage, and neither she nor her children had any knowledge of the situation until the question

arose about the time of the proposed distribution of Mrs. Richards' estate. The intestate and various members of her family, including the appellants, have always recognized Emma Byrne as Saxton's wife and their children as their lawful children.

By the law of California, as it existed at the time of the birth of the children to Saxton and Emma Byrne and still exists, the issue of all marriages deemed null in law or dissolved by divorce are legitimate, and by the laws of that State, where they still reside, they would be Saxton's legal representatives. The Court of Probate found that these children were entitled to have distributed to and between them in equal proportion one fourth of the intestate's estate, to wit, one twelfth thereof to each, and ordered distribution accordingly, and the Superior Court confirmed that action.

*Wilbur G. Manchester* and *Howard F. Landon,* with whom was *Thomas M. Losie* of Elmira, New York, for the appellants (plaintiffs).

*John H. Buck* and *Anson T. McCook,* for the appellees (defendants).

PRENTICE, C. J. By the law of California, in which State their parents were domiciled at the time of their birth, the children of Charles Platt Saxton and Emma Byrne were, at birth, legitimate. By a statute of that State enacted in 1850 and still in force, the issue of marriages null in the law are declared legitimate, and the courts of that State have determined that this provision is applicable to the issue of marriages null because bigamous. Laws of California, 1850, p. 188, § 2; Civil Code of California, 1872, § 1387; *Graham v. Bennet,* 2 Cal. 503. Their personal status as legitimates thus established is one which we ought to recognize

unless such recognition would violate some positive law of this State, contravene our established public policy, or offend against good morals. *Vanbuskirk* v. *Hartford Fire Ins. Co.*, 14 Conn. 583, 586; *Guarantee, etc., Deposit Co.* v. *Philadelphia, R. & N. E. R. Co.*, 69 Conn. 709, 720, 38 Atl. 792; *Cristilly* v. *Warner*, 87 Conn. 461, 463, 88 Atl. 711; *Gildersleeve* v. *Gildersleeve*, 88 Conn. 689, 695, 92 Atl. 684.

We have no positive law which would be violated by a recognition of the California status of these children. The last-named ground for non-recognition is but a subdivision of the larger matter of public policy. Minor on Conflict of Laws, § 9. The question of recognition in the present case thus becomes narrowed down to one as to whether any public policy of ours would be thereby contravened.

As bearing upon this question, it is indeed true that we have no law upon the subject of legitimacy, written or unwritten, to the same effect as that of California in question, and quite likely also true that public opinion in this State would not be favorable to the enactment of such a law, fixing and defining the status of the off-spring of parents domiciled here. But that does not furnish the test to be applied in determining whether or not recognition should be given to the status acquired under the laws of another jurisdiction. If it were, the principle of comity between States and nations would become one of much narrower application than it is. The inquiry, whose answer should determine whether recognition should be accorded by us to the status of persons elsewhere acquired, is whether or not there is any important matter of public policy here prevailing which would be contravened by such recognition.

Touching this inquiry, as applicable to the present situation, it is to be noted that recognition of the legitimacy of these children does not involve a recognition of

the lawfulness of their parents' relations or condonation of their fault.    It concerns only the rights of the innocent offspring.    It is further to be noted that the foreign law dealt with is not one legitimatizing illegitimates, but one creating a legitimate status at birth.    The claim for non-recognition is one which contends that we should deny recognition of legitimacy to those who were born legitimate by the law of the place of the domicil of their parents at their birth, and for that matter, although that may not be legally important, the place of their present domicil.    It is to be noted again that legitimacy is by the California statute predicated upon a marriage in form.    It is only where the parents have entered into a marriage in form that the issue are made legitimate.

Our public policy is one which insists upon the existence of the marriage relation between the parents as a condition precedent to the production of issue which society and the law will recognize as legitimate.    We have long, in the interests of good morals and for the safeguarding of social purity and the sanctity of the home and family, insisted upon that condition.    But we have not considered it either contrary to good morals or an invasion of the sanctity of the home and family, or as contrary to public policy, to restore children born out of wedlock to a legitimate status and the full enjoyment of the rights of legitimacy.    By statute such children become legitimate upon the subsequent marriage of their parents.    General Statutes, § 396.    From early times we have recognized that a child born out of wedlock was the child of its mother and capable of inheriting from her and through her.    *Eaton* v. *Eaton*, 88 Conn. 269, 279, 91 Atl. 191.    In this our position has been unique among common-law jurisdictions in its liberality and considerate treatment of the illegitimate, and by it we have emphasized that it was not the policy

of our law to visit the sins of the parents upon their innocent children, nor our belief that such a course was demanded in the interests of good morals or sound social conditions. The legislation of California in question deals with other conditions, but differs from our law in degree rather than in kind. It is similar in kind in that it makes legitimates of children born out of lawful wedlock and recognizes an inheritable quality in them. Is its difference in degree, relating as it does solely to children born of a marriage in form, such as to make it so offensive to good morals or public policy as established among us that we are called upon in self-protection to say that we should withhold recognition of the status which these children had at birth, and have always enjoyed in the State of their nativity and residence? Had the mother of these children been a deceased sister of the intestate, instead of their father a brother, their right to a share in the latter's estate would have been complete under our law. *Eaton* v. *Eaton*, 88 Conn. 269, 91 Atl. 191. Is there so wide a difference between inheritance through the father and through the mother, and in the matter of recognition of the relation of parent and child between children and father and children and mother, that it should be held to be subversive of good morals and in contravention of public policy to countenance a foreign law accomplishing in the one case what we do in the other?

However that may be, there is a larger and more far-reaching consideration of public policy involved, and one which should make us hesitate to ignore the status acquired by these children at birth in California, save under press of much stronger considerations than any existing in this case, viewed in whatever aspect. The matter of personal status lawfully acquired in one jurisdiction is a thing which, especially as between the States of this country, ought not to be lightly interfered

with or ignored. Minor, in his Conflict of Laws, page 212, in discussing this subject in connection with legitimacy and adoption, remarks that it would be in the highest degree inconvenient if a status of such a sort, once established, were liable to fluctuate and change with time, place and circumstance, and adds that when these relations have been once established by proper law they remain, save in rare cases, fixed and unchangeable, into whatever country the party may wander, or wheresoever the question may arise. The conditions are so rare justifying non-recognition that often text-writers and courts state the duty of recognition of personal status once acquired in one jurisdiction, by another, in general terms and without noticing the existence of exceptional cases arising from exceptional conditions. 1 Wharton on Conflict of Laws, p. 552; *Miller* v. *Miller*, 91 N. Y. 315, 320.

Minor's observation, that a policy of non-recognition in matters of legitimacy, save for grave and weighty reasons, would be in the highest degree inconvenient, is a moderate one. It would be not only inconvenient, but also would, with the shifting conditions and uncertainties created, lead to unfortunate inequalities and positive injustice. Legitimacy and the right of inheritance would be subject to fluctuation according as the person or a decedent chanced to be domiciled in this or that place. They would be dependent upon boundary lines. One who was a legitimate child residing one side of an imaginary line constituting a State boundary would be liable to find himself branded as a bastard should he remove across that line. In the one place he would be entitled to inherit from or through his father; in the other, not. In the one place his life would be free from stain; in the other the stain of illegitimacy would be cast upon him. In respect to these matters, uniformity of status, following the person wherever one

is, is of prime importance, and, in the interest of society, it should not be permitted to give place to unstable and shifting conditions, save under circumstances which furnish strong and cogent reasons for such a course.

The Superior Court did not err in confirming the order of the Court of Probate ascertaining the heirs and distributees of the intestate estate, and directing that distribution of one fourth of such estate be made in equal shares between them to Robert P. Saxton, Myra R. Watson and Hazel E. LeDuc as the legal representatives of Charles Platt Saxton, deceased; that is, one twelfth of said estate to each of them.

There is no error.

In this opinion THAYER and BEACH, Js., concurred; RORABACK and WHEELER, Js., dissented.