**WALKER et al. v. FIRST TRUST & SAVINGS BANK et al.**

(Circuit Court of Appeals, Eighth Circuit. April 22, 1926.)

No. 7115.

**1. Wills ⟨key⟩470—Testator's intent, to be determined from language of whole will, is controlling, and construction should give effect to all provisions of will, if possible.**

In construing a will, testator's intent, to be determined from language of whole will, is controlling, and such construction is to be placed on will, if possible and reasonable, as will give effect to all its words and provisions.

**2. Wills ⬳585(3)—Clause of will making bequests of sums to be paid monthly, followed by clause giving residue in trustee, held to cover merely period when estate was in probate.**

Clause of will making bequests of sums to be paid monthly, with provisions covering death of legatee during pendency of probate proceedings, which was followed by clause giving residue to trustee, with directions as to payments, distribution, and termination of trust, *held* to cover merely period when estate was in probate, and provisions thereof became functi officio when trust period began.

**3. Wills ⬳523—Whether testamentary gifts are to a class or to individuals depends on testator's intent, and scope of will, testator's general purpose, language, relationship of parties, and surrounding circumstances may be considered in determining intent.**

Whether testamentary gifts to several persons are gifts to a class or to individuals depends on testator's intent, and general scope of will, testator's general purpose, language used, relationship of parties, and surrounding circumstances may be considered as aids to determine such intent.

**4. Wills ⬳523—Will directing that any excess income of trust be paid to testator's three married daughters, share and share alike, held gift to class, with right of survivorship; "survivors."**

Where will, after directing trustee to make specified monthly payments from income of trust, directed that remainder of income be paid to three named married daughters "during the term of their natural lives, respectively," that, if any annuity should cease because of death of annuitant without issue, annuity should be divided between such daughters "or the survivor of them," and that any excess income be paid to such daughters, share and share alike, *held*, that gift of excess income was to three married daughters as a class, with right of survivorship, to exclusion of deceased married daughter's children; "survivors" not being used as meaning children.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Survive—Surviving—Survivor.]

**5. Wills ⬳523.**

That gift is to named children *held* not necessarily to indicate that they should take as individuals, instead of as class.

**6. Trusts ⬳271½—In suit by testamentary trustee for instructions, court will not declare future rights, or decide contingencies which may never arise, unless necessary for decision of immediate relief, and enforceable by decree.**

In suit in equity by testamentary trustee for instructions in execution of trust, court will not declare future rights, or determine contingencies which may never arise, unless such determination is necessary for decision of some immediate relief to be granted, and which it can enforce by decree.

12 F.(2d)—57

**7. Trusts ⬳271½—In suit by testamentary trustee for instructions, question as to disposition of income of 51 year old beneficiary on his death will not be answered, as being speculative, and involving rights of persons not in esse.**

In suit by testamentary trustee for instructions in execution of trust, question whether, on death of 51 year old life beneficiary of income, his children would be entitled thereto, will not be answered, as being speculative, involving rights of persons not in esse, and as not being necessary for present guidance of trustee.

**8. Trusts ⬳274(3)—Expenses of suit by testamentary trustee for instructions, in so far as chargeable to trust estate, held payable out of income of estate.**

Expenses of suit by testamentary trustee for instructions in execution of trust, involving construction of will, in so far as chargeable to trust estate, were payable out of income of estate, and not principal.

**9. Appeal and error ⬳753(2), 863—Decree, answering questions of testamentary trustee which were speculative, will be affirmed as to answers from which no appeal was taken, and as to answers not covered by any assignment of error.**

In suit by testamentary trustee for instructions, decree, answering questions of trustee which are speculative, and not properly answered at the time, will be affirmed as to answers from which no appeal was taken, and as to answers not covered by any assignment of error, though appeal was taken.

Appeal from the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Suit by the First Trust & Savings Bank, as trustee of the estate of John S. Brittain, deceased, and others, against John Brittain Walker and others, for instructions as to execution of testamentary trust. From the decree, John Brittain Walker and others appeal. Affirmed, as modified.

Robert A. Brown, of St. Joseph, Mo., for appellants Brittain.

William E. Stringfellow, of St. Joseph, Mo., for appellants Walker and Brigham.

Charles H. Mayer, of St. Joseph, Mo., for appellees Hastings.

Kendall B. Randolph, of St. Joseph, Mo. (Lewis F. Randolph and John P. Randolph, both of St. Joseph, Mo., on the brief), for appellees Motter.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. The appellee First Trust & Savings Bank was appointed trustee by the will of John S. Brittain, deceased. As such trustee it brought the pres-

ent suit, making the beneficiaries of the trust parties, asking for instructions in the execution of the trust. Jurisdiction was based on diversity of citizenship.

John S. Brittain died December 11, 1917. He left surviving five children, whose names and ages at the time of his death were as follows: Jessie Turner Brittain Walker, 50; Mildred Brittain, 48; John S. Brittain, Jr., 43; Mary Noel Brittain Hastings, 40; Susan Jane Brittain Motter, 38. He left surviving him no child of a deceased child. Three of his daughters were married and had issue. Mrs. Walker had three children. Mrs. Hastings had three children. Mrs. Motter had one child, and since the death of her father another child has been born. Since the death of Mr. Brittain, John S. Brittain, Jr., and Mildred Brittain have both married. John S. Brittain, Jr., has one child. Mrs. Mildred Brittain Brigham has no children. All of the grandchildren are living. Mr. Brittain, prior to his death, had given to each of his three married daughters $175,000; to each of the other children he had given about $75,000.

The clauses of the will, so far as they are material to the present inquiry, are as follows:

Clause Second. "I bequeath to each of my children, Jessie Brittain Walker, Mildred Brittain, Mary Noel Brittain Hastings, Susan Jane Brittain Motter and John S. Brittain, Jr., the sum of four hundred dollars ($400.00) per month, and to my sister, Olivia S. Brittain the sum of eighty dollars ($80.00) per month, which sum I direct shall be paid to each of my children and my sister, respectively, monthly on the first day of each month succeeding my decease, but in case of the death of any of my said children during the pendency of my estate in the probate court, leaving issue, then I direct that during such time the children of such deceased child shall receive the same amount their parent would have received if living, but in case of the death of any of my said children during the pendency of my estate in the probate court, without leaving issue surviving, then the annuity of such child shall cease. In case my son, John S. Brittain, Jr., decides to do so he may take one thousand (1,000) shares of the common stock of the John S. Brittain Dry Goods Company at par value of one hundred ($100.00) each, total one hundred thousand dollars ($100,000.00), in lieu of the above bequest of four hundred dollars ($400.00) per month. If he so elects, it must be with the understanding that he will have no further interest in my estate. If he elects to take said stock, it may be transferred to him at once."

Clause Fourth. [Paragraph 1.] "Subject to the foregoing, I give, devise and bequeath to the First Trust & Savings Bank, a corporation organized under the laws of the state of Illinois, and doing business at Chicago, Cook county, Illinois, and to its successor or successors, in trust, all the rest and residue of my estate, whether real, personal or mixed, wherever situated, whether in possession or expectancy, whether now owned or hereafter acquired, of which I may die seized, or to which I may have any right, title or interest in law or equity, at the time of my death, to have and to hold the same in trust, for the uses and purposes hereinafter mentioned; and I direct that upon the settlement of my estate in the probate court, all assets of my estate of every kind and description not heretofore disposed of by devise or bequest, shall be turned over to said First Trust & Savings Bank, as such trustee, and I direct that the said First Trust & Savings Bank shall not be required to give any bond under the laws of Missouri, for the performance of its duties as such trustee. The said trustee shall have full power and authority to sell and convey or cause to be sold and conveyed any part or portion of my real and personal estate, whenever in its judgment a disposition of the same may be wise and prudent, and to receive the proceeds of sale, and reinvest the same as other property and funds of my estate may be reinvested. * * *

[Paragraph 4.] "Out of the income of said property, or the proceeds thereof, said trustee shall pay first, the reasonable and necessary expense of executing this trust and reasonable compensation to said trustee, as provided by contract, and

[Paragraph 5.] "Second, shall pay my sister, Olivia S. Brittain, of Philadelphia, Pennsylvania, or Trenton, New Jersey, the sum of eighty dollars ($80.00) per month, and shall pay to each of my children, Jessie Brittain Walker, Mildred Brittain, Mary Noel Brittain Hastings and Susan Jane Brittain Motter, the sum of four hundred dollars ($400.00) per month, payable monthly on the first day of each month during the term of the natural life of each, respectively, and also a like sum of four hundred dollars ($400.00) per month to my son, John S. Brittain, Jr., payable monthly on the first day of each month during the term of his natural life, unless my said son shall elect to take one thousand (1000) shares of the stock of the John S. Brittain Dry Goods Company as his full share in my estate, and the remainder of the net annual income shall be paid to my daughters, Jessie Brittain Walker, Mary Noel Brit-

tain Hastings and Susan Jane Brittain Motter, during the term of their natural lives, respectively.

[Paragraph 6.] "In case of the death of any of my children during the existence of this trust, leaving issue, then the child or children of such deceased daughter or son shall receive the sum of four hundred dollars ($400.00) per month payable as aforesaid, which sum shall be divided among the children of such deceased child.

[Paragraph 7.] "In case the net annual income of any one year shall not be sufficient to pay the annuities herein provided for, then said trustee shall pay to my said sister, the sum of eighty dollars ($80.00) per month and the other annuities shall be ratably reduced.

[Paragraph 8.] "In case of the death of any of my children during the existence of this trust, without leaving lawful issue surviving, the annuity herein provided for shall cease.

[Paragraph 9.] "In case any annuity herein provided for shall cease, then the share of the income of such annuitant shall be distributed equally between my daughters, Jessie Brittain Walker, Mary Noel Brittain Hastings and Susan Jane Brittain Motter, or the survivor of them.

[Paragraph 10.] "In case the net annual income in any one year shall be more than sufficient to pay the annuities herein provided for, then such excess shall be paid to my daughters, Jessie Brittain Walker, Mary Noel Brittain Hastings and Susan Jane Brittain Motter, share and share alike.

[Paragraph 11.] "During the existence of this trust, said trustee shall once a year furnish each beneficiary hereunder a statement of the condition of said trust fund, including an itemized statement of the property and a list of securities held by said trustee hereunder.

[Paragraph 12.] "It is specially ordered and directed that no part of the said principal trust fund, or property or proceeds thereof shall be distributed to my children, but the principal trust fund shall remain intact until the death of the last survivor of my said children. Immediately on the death of the last survivor of my said children, this trust shall terminate, and the principal trust fund shall be divided as follows:

[Paragraph 13.] "First, said trustee shall pay all necessary costs and expenses of executing this trust, as per contract hereinbefore mentioned, and,

[Paragraph 14.] "Second, said principal trust fund shall be divided equally among my grandchildren, share and share alike."

For convenience of reference we have numbered the paragraphs of clause fourth 1 to 14, inclusive. Paragraphs 2 and 3 are not material here.

The trustee took possession about July 31, 1919. Jessie Turner Brittain Walker, who prior to her father's death had become a widow, died June 3, 1923, leaving her three children surviving. Prior to the death of Mrs. Walker, the trustee, in the administration of the trust estate, had paid each year to Mrs. Walker, Mrs. Hastings, and Mrs. Motter the excess annual income from the estate, mentioned in the fourth clause of the will. The average excess annual income for the years 1920, 1921, 1922, and 1923 was $11,432.30. Upon the death of Mrs. Walker the question was raised whether the Walker children were entitled to receive a share of the excess annual income. The trustee thereupon filed its bill in equity, asking for instructions in reference to the distribution of the excess annual income, and also in reference to a number of other matters. Eighteen questions were asked. The first question is as follows:

"(1) Jessie Brittain Walker, having died leaving issue surviving her, what disposition should be made by the trustee, during the existence of the trust, of the share in the excess annual income theretofore received by said Jessie Brittain Walker? Is such share payable in equal shares to Mary Noel Brittain Hastings and Susan Jane Brittain Motter, or is it payable in equal shares to the children of said Jessie Brittain Walker, deceased, or does it revert as an accumulation to the principal trust fund, or is it payable to the heirs of John S. Brittain, deceased, according to the laws of descent of the state of Missouri, and if so, to which heirs?"

[1] The places in the will in which the excess annual income is mentioned are clause fourth, paragraphs 5 and 10. In construing these paragraphs, elementary principles in the construction of wills, of course, must be borne in mind—among them that the intent of the testator is controlling; that such intent is to be sought in the language of the will, and from the whole will; that such construction is to be placed upon the will, if possible and reasonable, as will give effect to all the provisions of the will and to all the words of the various clauses. A consideration of the various provisions of this will has led to these conclusions:

(1) The testator intended to dispose of his entire estate and to avoid intestacy as to any part. This is shown by the provision for a trust covering the whole residuary estate, and by clauses in the trust attempting to pro-

vide disposition of annuities after the death of the annuitant.

(2) He intended to leave the principal of the estate intact during the life of all of his children. This is clearly provided in paragraph 12 of clause fourth.

(3) He intended to dispose of the whole of the income of the estate by annual distribution among various beneficiaries. This is shown by the provisions of paragraph 5 of clause fourth.

(4) He did not intend that the payments from the income of the estate to his several children during the trust period should be equal as to all. This is apparent from the provisions of paragraphs 5, 9, and 10 of clause fourth, which confine the distribution of excess annual income to three of the children.

(5) He intended that his three married daughters should have a preference over the two unmarried children to the extent of sharing in the excess annual income. This is shown by the provisions of paragraphs 5, 9, and 10 of clause fourth. A similar preference had been shown in gifts by him to his children prior to his death.

(6) He intended that the grandchildren (at least those living at the time of his death) should share in the income of the estate to the extent at least of $400 per month to any set of grandchildren whose parent, a child of the testator, died during the period of the trust. This is shown by the provision of paragraph 6 of clause fourth.

(7) He intended that distribution of the principal to the grandchildren at the end of the trust period should be equal among the distributees. This is shown by paragraph 14 of clause fourth.

(8) He intended that no son-in-law or daughter-in-law should share in the estate. This is shown by the provision in clause second of the will, and by paragraph 8 of clause fourth, that in case of the death of any child leaving no issue the annuity of that child should cease.

[2] It is clear from the wording of the will that there was no present gift to any one. The title to the whole estate was placed in the trustee, with directions to pay in the future. It is true that the wording of clause second of the will would indicate absolute gifts, but we think the provisions for payment contained in that clause were intended to cover merely the period in which the estate should be in probate, and that those provisions became functi officio when the trust period began. We say this because it is plain that the provisions of the two clauses are not cumulative

of each other, and, if the provisions of clause second were to be held effective after the commencement of the trust period, there would be conflict between the provisions of clause second and clause fourth: (1) Under clause second the annuities given to the beneficiaries were not dependent on whether the income of the estate was sufficient; under clause fourth they were dependent on the sufficiency of income. (2) Under clause second, in case of the death of a child without issue its annuity ceased, i. e., remained in the estate; under clause fourth the annuity in such case went to other specified annuitants.

It is also clear that the testator did not consider it certain that there would be each year excess annual income. This is shown by the provisions of paragraph 7 of clause fourth, giving one of the annuities a preference in case the income was insufficient to pay all; also by the provision of paragraph 10 of clause fourth, making each year stand by itself for the purpose of determining the excess annual income.

[3, 4] Having in mind the foregoing conclusions, we turn again to the question of the disposition after the death of Mrs. Walker of that share of the excess annual income which had theretofore been paid to her. The answer to the question depends upon whether the three married daughters mentioned in paragraphs 5 and 10 of clause fourth took as a class or as individuals. The only universal rule for determining whether testamentary gifts to several parties are gifts to them as a class or as individuals is to ascertain the intention of the testator. As aids to that end the general scope of the will, the general purpose of the testator, the particular language used, the relationship of the parties, and the surrounding circumstances may all be considered.

We have already analyzed to some extent the scope of the will and the general purpose of the testator. We now consider the other relevant matters. One of the tests often made use of in determining the existence of a class is whether the parties have common attributes. The three married daughters fulfill that test. (a) They were daughters of the testator; (b) they were married daughters having children. Further, the testator had treated them as a class prior to his death in making gifts of property to his several children. They had been given $175,000 each, while the two unmarried children had received but $75,000. Again, the testator groups them together as a class in the will itself. In three different paragraphs, 5, 9, and 10 of clause fourth, they are grouped together and segregated

from the other children for different treatment. Finally, and most important of all, the language of the will indicates that the three married daughters were to take as a class the excess annual income.

The language to be construed consists of several phrases contained in different paragraphs of clause fourth: (1) The phrase "during the term of their natural lives, respectively," where it occurs in the following provision at the close of paragraph 5 of clause fourth: "And the remainder of the net annual income shall be paid to my daughters, Jessie Brittain Walker, Mary Noel Brittain Hastings and Susan Jane Brittain Motter, *during the term of their natural lives, respectively.*" (2) The phrase "share and share alike," where it occurs in paragraph 10 of clause fourth, reading as follows: "In case the net annual income in any one year shall be more than sufficient to pay the annuities herein provided for, then such excess shall be paid to my daughters, Jessie Brittain Walker, Mary Noel Brittain Hastings and Susan Jane Brittain Motter, *share and share alike.*" (3) The phrase "or the survivor of them," where it occurs in paragraph 9 of clause fourth, reading as follows: "In case any annuity herein provided for shall cease, then the share of the income of such annuitant shall be distributed equally between my daughters, Jessie Brittain Walker, Mary Noel Brittain Hastings and Susan Jane Brittain Motter, *or the survivor of them.*" (Italics ours.)

The first of these phrases, "during the term of their natural lives, respectively," denotes a gift to a class. Payment of a share is to be made to each one of the three during her life; at her death payment theretofore made to her is to cease. The language is inconsistent with payment of that share to the estate of the deceased. But payment of the whole to the survivors is not inconsistent, for the payments to them will be of *their own shares* enlarged by the death of one member of the class.

In Meserve v. Haak, 191 Mass. 220, 77 N. E. 377, the trustee sought instructions as to a residuary clause reading as follows:

" 'All the rest, residue, remainder and reversion of all my estate and property, real personal and mixed, of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, I give, devise and bequeath to my said trustee, Isaac H. Meserve, in trust, for the following uses and purposes, that is to say; To collect the rents, income and profit and interest thereof, and first paying all taxes, charges, and insurance thereon, and all repairs, and any other expenses incident to the proper care, management and preservation of the said property, to pay over the same as often as quarter yearly to my children, and grandchildren now living, or who may be living at the time of my decease *in equal shares and proportions, for and during the natural life of each of my said children.* Upon the decease of the last surviving one of my children, I direct my trustee, or whoever shall then be my trustee, to convey all the remaining part of my estate hereinbefore conveyed to him, together with any income of the same, remaining in his hands, to the heirs and legal representatives of my deceased children, in equal shares, according to the number of my deceased children so represented, such heirs and legal representatives taking by way of representation, and not according to their number.' " (Italics ours.)

One of the children, Daniel S. Meserve, died leaving a widow, but no issue. The trust still continued. The court said there were three possible constructions relative to disposition of the share of the income that had previously been paid to Meserve: (1) Either the share might be held to accumulate until the death of the last survivor of the children and then be divided as part of the trust estate; or (2) it might be paid to the legal representative of Meserve; or (3) it might be divided amongst the surviving children and grandchildren. Which of the last two should be adopted would depend upon whether the children and grandchildren took as tenants in common or as a class. The court, after considering the provisions of the will, found no reason to suppose the testator intended an accumulation of the income. The provisions of the will were inconsistent with such a purpose. It contemplated the payment of the entire income during the life of the trust estate. The court adopted the construction that the children and grandchildren took as a class. It said:

"The income is given 'for and during the natural life of each of my said children.' This imports that in case of the death of a child, and probably also of a grandchild, the share of the income payable to such child ceases, and is inconsistent with its continued payment after the child's death to his estate. The children and grandchildren are grouped together, and the reference to survivorship in the clause providing for the termination of the trust has some tendency to show that the testator treated them as a class. The fact that this construction would cause seeming inequality in some contingencies that might arise is not, we think, decisive against it."

In Wheaton v. Batcheller, 211 Mass. 223, 97 N. E. 924, instructions were sought by the trustee as to the construction of a clause of a will which provided for property to be held in trust "to pay over and divide equally the net income thereof to and among my children," who were specifically named, "for and during their lives respectively." Held, the children took as a class with survivorship.

In Clarke v. Rathbone, 221 Mass. 574, 109 N. E. 651, trustees under a will sought instructions as to a clause of the will reading as follows:

"To pay all the remainder of said income, rents, or profits of my estate, both real and personal, whatever the same may be from time to time from the extinguishment of charges, or the expiration of annuities, in equal shares to my several children, as nearly quarterly as may be convenient; that is to say: To Mrs. Catherine Henshaw Jackson, wife of Doct. Samuel Jackson, U. S. N., Elizabeth Platt Baury, Mrs. Caroline Hayward Bradford, wife of Capt. Robert F. Bradford, U. S. N., and Frederic Francis Baury, U. S. N., for, and *during the period of the natural life of each of my said children.* And upon the decease of any of my said children, the share, or shares of said deceased child, or children, notwithstanding such deceased child or children shall leave issue surviving, until after the decease of all my said children, when I direct." (Italics ours.)

After commenting on the incomplete condition of the last sentence of the clause, the court said:

"We are of opinion that by the true construction of this item of the 'fourth' article the income was given to the children named as a class, and that upon the death of one the income was to be paid to the survivors, and upon the death of all but one it went to the last survivor."

It is contended by appellant that, even though the foregoing construction of the phrase in question might be correct, if the paragraph containing the phrase stood alone, yet that the words "share and share alike," contained in paragraph 10, mean that the three married daughters should each take a vested, inheritable interest, and that the phrase in paragraph 10, being a later expression in the will, supersedes the phrase in paragraph 5. It may be conceded that, where two clauses in a will are in irreconcilable conflict, the later one will prevail over the former; but is there an irreconcilable conflict? The words "share and share alike" do not always indicate a vested, inheritable estate. They often indicate merely the proportion in which members

of a class shall take. In Meserve v. Haak, supra, the language used in a similar situation was "in equal shares and proportions." The court said in reference to the effect of this language:

"The words 'in equal shares and proportions' do not signify that the children and grandchildren are to take as tenants in common but have reference to the division of the income and are intended to fix the amounts which shall be paid to them. The general rule is, no doubt, that such words indicate a tenancy in common. But they are not conclusive."

A like view was taken of similar language in Clarke v. Rathbone, supra; Anderson v. Bean, 220 Mass. 360, 107 N. E. 964; Trenton Trust Co. v. Sibbits, 62 N. J. Eq. 131, 49 A. 530; Smith v. Haynes, 202 Mass. 531, 89 N. E. 158; Jackson v. Roberts, 14 Gray (Mass.) 546.

[5] Nor does the naming of the children necessarily indicate that they should take as individuals instead of as a class. Schaffer v. Kettell, 14 Allen (Mass.) 528; Stedman v. Priest, 103 Mass. 293; Warner's Appeal, 39 Conn. 253; Bolles v. Smith, 39 Conn. 217.

We conclude that there is no irreconcilable conflict between the two phrases in question, but that full effect may be given to both.

It is contended by appellant that the testator would not have used a whole paragraph merely to express what the one word "equally" would have expressed. But such is not the case. Paragraph 10 of clause fourth performs another very important function. It puts each year's income on its own separate basis, and thereby makes it clear that the annuities provided in the preceding paragraphs are not cumulative.

The phrase "or the survivors of them," contained in paragraph 9 of clause fourth, is confirmatory of the construction we have given to the phrase "during the term of their natural lives, respectively." While paragraph 9 does not, strictly speaking, deal with excess annual income, yet the paragraph indicates that the testator regarded the three married daughters as a class—intended that they should share equally in a specified fund, and that there should be survivorship among them as to the fund. We cannot assent to the suggestion of appellants that the word "survivors" in paragraph 9 means "children." There is no compelling necessity shown for giving the word other than its ordinary meaning.

In addition to the foregoing, it is to be noted that, when the testator intended the annuity of a deceased child to go to the children of that child, he said so in plain terms, as in

paragraph 6 of clause fourth. There is no similar provision as to shares in the excess annual income. Further, to hold that by paragraph 10 of clause fourth a vested, inheritable estate was created in each of the three daughters mentioned would be to disregard the plain intent of the testator appearing in other paragraphs of the will that the sons-in-law should be given no interest in the estate.

Our conclusion is that the gift of excess annual income was to the three married daughters as a class with the incident of survivorship. Our answer to the first question is that payment of the excess annual income accruing since the death of Jessie Brittain Walker should be made in equal shares to Mary Noel Brittain Hastings and Susan Jane Brittain Motter.

[6, 7] The eighth question asked by the trustee reads:

"(8) In the event of the death of John S. Brittain (Jr.) during the existence of the trust, leaving issue, is the child or children of said John S. Brittain (Jr.) entitled to receive the sum of four hundred dollars ($400.00) per month?"

John S. Brittain, Jr., a child of the testator, is still living, about 51 years of age. One child of his, John S. Brittain, III, is also living. It is quite possible that other children may be born to John S. Brittain, Jr., during the existence of the trust. The question asked by the trustee is therefore speculative, and may involve the rights of persons not in esse; the instruction asked is not necessary for the present guidance of the trustee.

As a general rule, a court of equity "will not undertake, where there is no matter in dispute, to declare future rights, nor will it ever undertake to decide upon and determine contingencies which may never arise, unless such determination is necessary for the decision of some immediate relief to be granted, and which it can enforce by a decree." 40 Cyc. 1846.

In Pomeroy's Equity Jurisprudence (3d Ed.) § 1157, the rule is stated as follows: "It is well settled that a court will never entertain a suit to give a construction or declare the rights of parties upon a state of facts which has not yet arisen, nor upon a matter which is future, contingent, and uncertain."

In May v. May, 167 U. S. 310, 323, 17 S. Ct. 824, 829, 42 L. Ed. 179, wherein a trustee had asked for instructions relative to a trust under a will, the court in its opinion said: "Upon a bill in equity by a trustee for instructions in the execution of his trust, the court will not decide questions depending upon future events, and affecting the rights of persons not in being, and unnecessary to be decided for the present guidance of the trustee."

To the same effect see the following cases: Cross v. De Valle, 1 Wall. 1, 17 L. Ed. 515; Cowles v. Cowles, 56 Conn. 240, 249, 13 A. 414; Eaton v. Eaton, 88 Conn. 269, 274, 91 A. 191; Id., 88 Conn. 286, 91 A. 196; Bridgeport Trust Co. v. Bartholomew, 90 Conn. 517, 97 A. 758; Strawn v. Jacksonville, etc., 240 Ill. 111, 118, 88 N. E. 460; Huston v. Dodge, 111 Me. 246, 88 A. 888; McCarthy v. McCarthy, 121 Me. 398, 117 A. 313; Wethered v. Safe Dep. & Tr. Co., 79 Md. 153, 163, 28 A. 812; Wahl v. Brewer, 80 Md. 237, 30 A. 654; Coghlan v. Dana, 173 Mass. 421, 53 N. E. 890; Hall v. Cogswell, 183 Mass. 521, 67 N. E. 644; Wheaton v. Batcheller, supra; State v. Prewett, 20 Mo. 165; Lich v. Lich, 158 Mo. App. 400, 425, 138 S. W. 558; Stewart v. Stewart, 61 N. J. Eq. 25, 47 A. 633; Cuskaden v. Steelman, 88 N. J. Eq. 93, 102 A. 261; Cochrane v. Schell, 140 N. Y. 516, 526, 35 N. E. 971; Matter of Graham, 98 Misc. Rep. 518, 162 N. Y. S. 861; In re Baechler, 121 Misc. Rep. 691, 202 N. Y. S. 485; In re Teller, 215 Pa. 263, 64 A. 525; In re Lockhart, 267 Pa. 390, 111 A. 254.

Our conclusion is that the eighth question should not be answered at this time.

[8] The eighteenth question is:

"(18) Are the expenses of this proceeding for the construction of said last will and testament of John S. Brittain, deceased, in so far as such expenses are chargeable to the trust estate, payable out of the income or the principal of said trust estate?"

We agree with the view of the court below that the expenses of this proceeding, in so far as chargeable to the trust estate, are payable out of the income from the estate. 40 Cyc. 1867; Denison v. Denison, 96 App. Div. 418, 89 N. Y. S. 126, affirmed 183 N. Y. 505, 76 N. E. 1093.

What we have said would dispose of all the questions asked by the trustee; some of them being answered by our answer to the first question, and others falling with the eighth question into the class of speculative questions, not proper to be answered at this time.

[9] However, the questions of this latter class have been answered by the court below. In one instance appeal has not been taken by the party interested in such answer. As to such answer, the decree will be affirmed on account of acquiescence. In other instances,

though an appeal has been taken by a party interested, no assignment of error covers the particular point involved in the answer. The decree will be affirmed as to such answers. But in other instances appeals have been taken, and proper assignments of error have covered particular points.

It is to be noted, also, that some of the appellant beneficiaries have not consented that the court should answer all the questions asked by the trustee. In the answer filed by the Walker children, consent was expressly limited to the determination of their rights under the will "in so far as may be necessary at this time."

In view of this situation, we have examined the several questions asked by the trustee for the purpose of determining the essential character of each, whether speculative or otherwise, whether involving the rights of possible persons not in esse, and whether necessity exists for it to be answered for the present guidance of the trustee. Our conclusions are that the decree of the court below should be affirmed, so far as it answers questions 1, first one-half of 3, 4, 5, 15, 16, and 18. In so far as the decree answers the remaining questions, it should be modified, so as to refuse to answer them at this time, but with leave to make such further application for instructions as change of circumstances may make necessary.

It is so ordered.