CARLETON L. MARSH, GUARDIAN AD LITEM v.
GUARANTY TRUST COMPANY OF NEW YORK ET AL., EXECUTORS
(ESTATE OF JESSIE S. FOOT)

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 79317

CARLETON L. MARSH, GUARDIAN AD LITEM v.
GUARANTY TRUST COMPANY OF NEW YORK ET AL., TRUSTEES
(ESTATE OF JESSIE S. FOOT)

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 79318

LLOYD J. VAIL, GUARDIAN AD LITEM v.
GUARANTY TRUST COMPANY OF NEW YORK ET AL., EXECUTORS
(ESTATE OF JESSIE S. FOOT)

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 79319

LLOYD J. VAIL, GUARDIAN AD LITEM v.
GUARANTY TRUST COMPANY OF NEW YORK ET AL., TRUSTEES
(ESTATE OF JESSIE S. FOOT)

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 79320

GUARANTY TRUST COMPANY OF NEW YORK ET AL., EXECUTORS
v. ESTATE OF JESSIE S. FOOT

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 82080

GUARANTY TRUST COMPANY OF NEW YORK ET AL., EXECUTORS
v. ESTATE OF JESSIE S. FOOT

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 82081

CARLETON L. MARSH, GUARDIAN AD LITEM
v. ESTATE OF JESSIE S. FOOT

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 82237

Memorandum filed November 26, 1951.

*Marsh & Garrison,* of Greenwich, for Carleton L. Marsh, Guardian.

*Vail & Hannon,* of Greenwich, for Lloyd J. Vail, Guardian.

*Hirschberg, Pettengill, Strong & Deming,* of Greenwich, for Guaranty Trust Company of New York et al., Executors and Trustees.

DALY, J. These seven appeals from probate were presented upon an agreed statement of facts. As stated in the agreed statement of facts, they involve the will of Jessie Storms Foot, who died October 27, 1943, domiciled in Greenwich, Connecticut. Her will dated March 25, 1943, was admitted to probate in the Probate Court for the district of Greenwich on November 23, 1943.

The basic controversy involves article 13th of said will, which creates a trust of $125,000 for the benefit of William J. Brown and directs that upon his death the trustees should "divide and set apart the then principal of the trust estate into separate funds for the issue of my said nephew, WILLIAM J. BROWN, then surviving, in equal shares *per stirpes;* . . ." A similar trust of $125,000 was created under article 14th of the will, providing a life estate for George L. Brown, the brother of William, and upon the death of George without issue and under certain contingencies, to add the remainder of that trust to the principal of the article 13th trust.

William J. Brown at his death left three children him surviving—William J. Brown, III and Virginia O. Brown, children of his marriage to Eunice Collupy Brown, and a third child now named Peter Linus Weis, born of a later marriage, which marriage is claimed by the guardian for the other two children to have been bigamous. The basic issue is whether said third child, Peter Linus Weis, is entitled to share in the trust in question.

A chronological statement of facts follows:

October 24, 1933
> William J. Brown married Eunice Barbara Collupy and became domiciled in Massachusetts.

September 8, 1934
> Birth of William J. Brown, III at Boston, Massachusetts.

March 3, 1937
> Birth of Virginia O. Brown at Boston, Massachusetts.

November 30, 1941
> William Jeffrys Brown and Ombra Sybil Bacon obtained a marriage license in Greenwich, Connecticut.

December 8, 1941
> Eunice Collupy Brown obtained a divorce decree *nisi* from William J. Brown in the commonwealth of Massachusetts, which decree did not become final until June 8, 1942.

February 22, 1942
> William J. Brown went through a purported marriage ceremony with Ombra Sybil Bacon at Greenwich, Connecticut, Eunice Collupy Brown being still living. Thereafter, William J. Brown and Ombra Sybil Bacon lived together as man and wife in the state of New York, continuing their domicile in that state previously established.

October 8, 1942
> The child, now named Peter Linus Weis, was born to Ombra Sybil Bacon at Rochester, New York. He was named Peter Jeffrys Brown.

March 25, 1943
> The testatrix, Jessie Storms Foot, executed the will now before the court.

October 27, 1943
> The testatrix, Jessie Storms Foot, died.

October 18, 1944
> The purported marriage of William J. Brown and Ombra Sybil Bacon was annulled by the Supreme Court of New York, County of Monroe. With respect to the child, Peter Jeffrys Brown, now named Peter Linus Weis, the court decreed that he "is the legitimate child of both the plaintiff, Ombra B. Brown, and the defendant, William Jeffrys Brown, Jr." The guardian for William J. Brown, III, and Virginia

O. Brown objects to the admissibility of any facts re-lating to the annulment proceedings and the legitima-tion of said Peter, hereinbefore mentioned, upon the ground that they are irrelevant and immaterial.

February 26, 1946, 3:02 p. m.

The infant Peter Jeffrys Brown was adopted by Linus R. Weis in Children's Court, Monroe County, New York, with the consent of both parents, but without limitation of his rights of inheritance and succession from his natural parents, and his name was changed to Peter Linus Weis.

February 26, 1946, 9:04 p. m.

William J. Brown died.

December 31, 1946

Eunice C. Brown was duly appointed guardian of the person and estate of William J. Brown, III, and Vir-ginia O. Brown by the Probate Court of Middlesex County, Massachusetts.

April 2, 1948

Guaranty Trust Company of New York and Cecil A. Lennan filed a number of accounts in the Probate Court for the district of Greenwich, Connecticut, three of which are now before this court; one account-ing as executors, covering the period from October 27, 1943, the date of death of Jessie Storms Foot, to May 9, 1947; the second accounting as trustees under article 13th of the will of Jessie Storms Foot, covering the period from August 1, 1944, to May 9, 1947. The accounting under said article 13th shows the trust fund divided into three equal shares, one of said shares being set aside for the infant Peter Linus Weis. The third accounting covered the same period but related to the article 14th trust. Before said Guaranty Trust Company of New York and Cecil A. Lennan as execu-tors and trustees undertook the preparation of the foregoing accounts, they had notice of the claim that Peter Linus Weis was born illegitimate and that, nevertheless, his guardian claimed an interest for him in all respects equal to that of William J. Brown, III, and Virginia O. Brown in the trusts created under articles 13th and 14th of the will: and, furthermore, that the guardian of William J. Brown, III, and Vir-ginia O. Brown would deny that Peter had any rights

thereto and, in addition, that each guardian would oppose and resist the efforts of the other to support the claims of his respective ward or wards.

April 2, 1948

The Probate Court for the district of Greenwich appointed Carleton L. Marsh guardian ad litem for the infants William J. Brown, III and Virginia O. Brown, and appointed Lloyd J. Vail guardian ad litem for the infant Peter Linus Weis.

December 16, 1948

The Probate Court for the district of Greenwich entered an order approving the executors' accounting and the accounting of the trustees under article 14th of the will.

June 14, 1950

The Probate Court for the district of Greenwich entered an order approving the accounting of the trustees under Article 13th of the will of Jessie Storms Foot.

The first question is whether or not Peter Linus Weis, formerly Peter Jeffrys Brown, is an issue of the late William J. Brown, a nephew of the late Jessie Storms Foot. It is claimed by the guardian for the other two children that Peter is not a legitimate issue and is not entitled to share in the trust in question. In *Eaton* v. *Eaton,* 88 Conn. 286, at page 290, the court said: "The words 'issue of his or her body' include illegitimate as well as legitimate issue. There is nothing in the will to indicate the use of these words in any other than their prima facia signification. *Eaton* v. *Eaton,* ante, p. 269. . . ."

In *Moore* v. *Saxton,* 90 Conn. 164, at page 170, the court stated: "Minor's observation, that a policy of non-recognition in matters of legitimacy, save for grave and weighty reasons, would be in the highest degree inconvenient, is a moderate one. It would be not only inconvenient, but also would, with the shifting conditions and uncertainties created, lead to unfortunate inequalities and positive injustice. Legitimacy and the right of inheritance would be subject to fluctuation according as the person or a decedent chanced to be domiciled in this or that place. They would be dependent upon boundary lines. One who was a legitimate child residing one side of an imaginary line constituting a State boundary would be liable to find himself branded as a bastard should he remove across that line. In the one place he would be entitled to inherit from or through

his father; in the other, not. In the one place his life would be free from stain; in the other the stain of illegitimacy would be cast upon him. In respect to these matters, uniformity of status, following the person wherever one is, is of prime importance, and, in the interest of society, it should not be permitted to give place to unstable and shifting conditions, save under circumstances which furnish strong and cogent reasons for such a course."

Peter Linus Weis is entitled to share in the trust in question.

It is claimed that the accounts of the fiduciaries should be disallowed so that they may bring a construction proceeding. The fiduciaries are not required to bring an action for the construction of the will.

The Probate Court concluded and ordered that the compensation allowed to each guardian ad litem, $2500, should be paid out of the residuary estate. The executors claim that the allowances should be paid out of the trust fund in question.

Section 6861 of the General Statutes provides, in part, as follows: "Any guardian ad litem appointed under the provisions of this section may be allowed reasonable compensation by the court appointing him and the same shall be paid as a part of the expenses of administration."

The Probate Court did not err in ordering that the compensation allowed to each guardian ad litem should be paid out of the residuary estate.

The total estate of Jessie Storms Foot inventoried more than $3,000,000. The fund under article 13th amounted to $125,000. The amount actually involved is between $41,000 and $42,000. The guardian ad litem for William J. Brown, III, and Virginia O. Brown contends that the amount of compensation allowed by the Probate Court is not reasonable and that this court has the authority to order the payment of a larger sum as reasonable compensation. It is true, as claimed, that the entire estate involved more than $3,000,000. However, the dispute does not involve that sum. The Probate Court allowed fees totaling $5,000, $2500 to each guardian ad litem. This is equivalent to almost 12 per cent of the amount involved.

The fiduciaries contend that this court is not concerned with the amount of the fee or compensation allowed to the guardian because "under the statute providing for the appointment of the

guardian compensation is allowed by the court making the appointment" and that therefore this court should not now pass upon the allowance made by the Probate Court for the district of Greenwich. This amounts to saying that the sections of the statutes providing for appeals from probate do not apply in this instance. The fiduciaries do not claim that the infant beneficiaries are not "aggrieved" and that the appeal is really taken by the guardian ad litem and the attorneys associated with him to increase the allowance in which they are to share. The first question to be decided is whether this court should consider whether the compensation, $2500, allowed by the Probate Court is not reasonable. I am of the opinion that this court can consider this question upon an appeal.

I am of the opinion that the guardian ad litem and the lawyers who have been associated with him have done a great deal of valuable work. Their work has been and is deserving of commendation. They have had special problems and difficulties, requiring knowledge, skill and judgment. They have submitted excellent briefs. However, in view of the amount involved and the other factors to be considered I cannot say that the Probate Court erred in making an allowance of $2500 to the guardian ad litem.

Judgment is rendered in each case dismissing the appeal.